## John Hancock Mutual Life Insurance Company v. Virginia National Bank.

June 14, 1971.

Record No. 7477.

Present, Snead, C.J., I'Anson, Gordon, and Cochran, JJ.

*Thomas H. Willcox, Jr. (David H. Adams; Willcox, Savage, Lawrence, Dickson & Spindle,* on brief), for plaintiff in error.

*Richard S. Glasser (Glasser and Glasser,* on brief), for defendant in error.

Snead, C.J., delivered the opinion of the court.

Virginia National Bank (bank) brought an action against John Hancock Mutual Life Insurance Company (company) to recover $9,569.02, which it claimed was due by virtue of an assignment of

a life insurance policy. The policy had been assigned by Nathan Swersky, the insured, to secure certain loans made to him and his wife by the bank. The company claimed it was entitled to set off against the policy's cash value the amount of premium loans it had made to Swersky. But the bank contended that the company was estopped to do so. On October 22, 1969 the court awarded a judgment to the bank in the amount of $7,671.75, which represented the cash value of the policy. We granted the company a writ of error to that judgment.

The fundamental issue presented in this appeal is whether the evidence is sufficient to support the trial court's holding that the company is estopped to set off premium loans made against the cash value of the policy and, if so, to what extent.

Nathan Swersky and his wife, Annette, operated a variety store in Norfolk. They had from time to time borrowed money from the bank, and as of November 28, 1961 they were indebted to the bank in the amount of $4,900.

In order to obtain additional loans, Nathan Swersky assigned to the bank on November 28, 1961 his $25,000 life insurance policy, which had been issued to him by the company on February 27, 1958. At the time the assignment was made, the bank loaned the Swerskys an additional $1,500, thereby increasing their indebtedness to $6,400.

The annual premium on the policy was $1,331. However, Swersky on March 16, 1960 had requested in writing that the company put into effect the "automatic premium loan provision" of his policy. This was done and it meant the company would apply automatically the maximum available loan toward the payment of a premium, if the premium was not paid when due. When Swersky assigned this policy to the bank he did not inform the bank that the "automatic premium loan provision" was in effect, nor did the bank ask him about it.

On the day of the assignment, or soon thereafter, the bank sent the company the assignment agreement to have it acknowledged. The bank also requested the company to inform it of the policy's cash value, loan position, and whether the premiums were paid. On December 4, 1961 the company acknowledged receipt of the assignment, and informed the bank that the cash value was $3,148; that the premiums were current; and that there were no loans outstanding. The information concerning loan position was in error, because there were premium loans outstanding in the sum of $2,990.47. After

receipt of this information the bank continued to make loans to the Swerskys, and as of August 7, 1967 their indebtedness reached a maximum of $15,600.

The company used a standard form to convey the information to the bank. Space was provided in the form to show, among other things, the amount of loans and interest thereon. Also on the form, the words "Automatic Premium Loan" appeared adjacent to a single box that had not been marked by the company. Although the bank did not specifically request information concerning the "automatic premium loan provision", the court interpreted the company's failure to mark the box to mean this provision had not been put into operation.

It was not until October 17, 1967, after the bank had made a request for information concerning the policy, that it learned from the company that outstanding premium loans totaling $7,112.59 existed against the policy's then cash value of $7,489.17. The loans were attributed solely to the application of the "automatic premium loan provision" to the payment of premiums. Upon learning of the policy loans, the bank discontinued all further credit to the Swerskys and demanded that they reduce their indebtedness immediately. At the time the action was commenced the Swerskys owed $9,569.02.

In May 1968, before the next premium was due, the bank notified the company not to use any "accumulated dividends" or "increased cash value" toward the payment of premiums. The May 1968 premium on the policy was not paid and the policy lapsed at the expiration of the grace period.

On June 18, 1968 the company wrote the bank setting out the dates various premium loans were made, and also confirmed that it had erroneously informed the bank on December 4, 1961 of the non-existence of premium loans of $2,990.47. The bank surrendered the policy in July and requested its cash value, but the company maintained it had a right to set off all premium loans against the cash value.

The burden of proof rests upon the party relying on the doctrine of estoppel to prove each element by clear, precise and unequivocal evidence. "The evidence must not leave the matter to mere inference or conjecture but must be certain in every particular". *Utica Mutual* v. *National Indemnity*, 210 Va. 769, 773, 173 S.E.2d 855, 858 (1970). The evidence in this case conclusively establishes that the company misrepresented to the bank that no loans were out-

standing against the policy's cash value as of December 4, 1961. But, as admitted by the company, a premium loan of $2,990.47 was outstanding on that date. In making loans to the Swerskys after December 4, 1961 the bank relied upon this misrepresentation to its detriment. We hold that the company is estopped to set off the premium loans of $2,990.47 made before December 4, 1961.

■ The bank contends, however, that the company should be estopped to claim a set off of any loans made pursuant to the "automatic premium loan provision". The trial court agreed with this contention, and held the company was estopped from claiming any premium loans made either before or after December 4, 1961. We do not agree that the company is estopped from setting off premium loans made after December 4, 1961.

The "automatic premium loan provision" was set out in the policy. Swersky had requested in March 1960 that this provision be put into effect. When the policy was assigned to the bank in November 1961 this provision was operative, and the bank took the policy subject to rights and liabilities of the assignor Swersky. *Massachusetts Mutual Life Insurance Co.* v. *Pinellas Central Bank & Trust Co.*, 175 So. 2d 245 (Fla. 1965). Yet, when the bank had Swersky assign the policy to it, it did not inquire of him whether he had elected to have the "automatic premium loan provision" put into operation. Nor did the bank inquire of the company whether this provision was in effect. A witness for the bank testified that he "[n]ever sought" that information.

The trial court held that the company's failure to mark the box on its form adjacent to the words "Automatic Premium Loan" was a negative statement of fact. In light of the fact that there was only one box, and a negative answer would be given by not marking the box, the trial court's interpretation was proper. Thus, the bank was entitled to conclude from the form that the "automatic premium loan provision" had not been elected as of December 4, 1961. But the evidence does not clearly, precisely and unequivocally establish that the bank relied on the company's misrepresentations to the extent the "automatic premium loan provision" was not in operation. Although the bank requested the loan position of the policy, its evidence shows that it was not seeking information concerning the "automatic premium loan provision". Only by inference or conjecture is the bank able to maintain that it made loans in reliance on

the misrepresentation that the "automatic premium loan provision" was not in effect.

We conclude that the company was entitled to set off the premium loans it made to Swersky after December 4, 1961, but that it was not entitled to set off the premium loans made before that date. At the time the policy lapsed the cash value was $7,671.75, and outstanding premium loans were $7,458.88. But the company can set off only the premium loans made after December 4, 1961, which amounted to $4,468.41 ($7,458.88 less $2,990.47). The bank was therefore entitled to a judgment in the amount of $3,203.34 ($7,671.75 less $4,468.41).

For the reasons stated, an order will be entered here modifying the trial court's order of October 22, 1969, so as to award judgment to Virginia National Bank in the sum of $3,203.34, with interest thereon at 6% per annum from July 24, 1968 until paid. The judgment appealed from is

*Modified and affirmed.*