## Richmond

EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY OF AMERICA
v. GREAT AMERICAN INSURANCE COMPANY, ET AL.

November 26, 1973.

Record No. 8186.

Present, Snead, C.J., I'Anson, Harrison, Cochran, Harman and Poff, JJ.

*G. Kenneth Miller* (*May, Garrett, Miller & Parsons*, on brief), for plaintiff in error.

*J. Alvernon Smith, Jr.,* (*Paul, Smith & Blank,* on brief), for defendants in error.

Poff, J., delivered the opinion of the court.

As the result of a collision on September 15, 1970 between a car driven by William Tiney Howard, Jr., and a car driven by Lee Clayton Travers, Travers lost his life. When the administrator of his estate asserted claim for wrongful death against Howard, Great American Insurance Company (Great American), which had issued Howard an automobile liability insurance policy, denied coverage. Employers Commercial Union Insurance Company of America (Employers), which had issued Travers an automobile liability insurance policy providing uninsured motorists' coverage, moved the trial court pursuant to Code §§ 8-578 to -585 (Repl. Vol. 1957) (Declaratory Judgments),[1] to declare that "Great American Insurance Company does owe coverage" to Howard and joined Howard and Travers' administrator as interested parties defendant. By letter opinion dated February 29, 1972 and final order entered April 18, 1972 the trial court declared that Great American does not owe coverage to Howard. Employers appeals from the declaration of the trial court.

On August 3, 1970 Great American issued Howard's policy. On the printed application filed with Robert F. Burke, III of C. F. Scott, Inc., an insurance sales agency in Petersburg, Howard attested by signature that he had not "been convicted of a moving traffic violation during the past 36 months", and Burke heard him say that "he had never had any convictions or violations of any type".[2] The application and Howard's $42.00 annual premium payment were mailed to Mabrey Melvin Hall, Great American's senior personal lines underwriter, in Raleigh, North Carolina. Thereafter on September 2, 1970, in response to his request, Hall received from the Virginia Division of Motor Vehicles a report of Howard's driving record. That report showed that in 1969 Howard had been convicted in Texas of two speeding violations. Hall mailed Burke a copy of the report attached to a printed form instructing Burke to cancel Howard's policy. Burke received Hall's letter on September 4, 1970. Although Burke was empowered by company policy to "cancel flat", i.e., rescind *ab initio*, he filed the papers and took no action. At the foot of the printed form was the handwritten notation, "Talked to Mel Hall 9/16/70—*is* covered".

---

[1] Code § 8-581.1 (originally enacted Acts 1968, c. 782), *as amended* (Cum. Supp. 1973), was in effect when Employers brought this action.

[2] Howard testified that he did not make such a statement; but Employers concedes that the trial court resolved this testimonial conflict in favor of Burke and, therefore, in favor of Great American.

September 16, 1970 was the date Burke's office received notice of the accident.

On September 17, 1970, two days following the collision, Hall's Raleigh office mailed Howard a notice cancelling his policy prospectively effective September 28, 1970 and enclosed a check for $28.00 representing a refund of premium for the policy term subsequent to the date of cancellation. The same day, Great American's claims office in Richmond mailed standard form SR-21 certifying Howard's insurance coverage to the Division of Motor Vehicles and the next day notified Howard by letter that in "undertaking to investigate" the accident Great American "does not waive any of its rights to disclaim coverage" on account of Howard's misrepresentations. On October 30, 1970 the Richmond office denied coverage on the claim for wrongful death and on November 18, 1970 wrote to the Division of Motor Vehicles requesting return of the form SR-21. This form was subsequently returned. On October 12, 1971, by handwritten notation on an office memorandum, Great American indicated that the policy had been "cancelled flat for claim reason" and refunded to Howard the remainder of his premium payment.

Employers contends that after knowledge of Howard's misrepresentation Great American affirmed its contract of insurance for a period embracing the date of the accident and thereby waived its right to cancel *ab initio* for fraud in the inducement, or became estopped by its conduct to do so. Great American contends that such waiver occurs only upon proof of both actual knowledge of the fraud and knowing intent to waive; that such estoppel occurs only when one alleging estoppel proves prejudice resulting from the other's conduct; and that Employers failed to bear its burden of proving actual knowledge of fraud, intent to waive, or prejudice.

■ Waiver and estoppel *in pais* are often confused. Because one appears to partake of the nature of the other, the two are sometimes treated as convertible terms. But, the two should be recognized and applied as distinct legal doctrines, each serving distinct functions. Waiver, a doctrine at law, is voluntary action or inaction with intent to surrender a right *in esse* with knowledge of the facts and circumstances which gave birth to the right. Estoppel, as a doctrine in equity, is the consequence worked by operation of law which enjoins one whose action or inaction has induced reliance by another from benefiting from a change in his position at the expense of the other.

In waiver, both knowledge of the facts basic to the exercise of the

right and the intent to relinquish that right are essential elements. *May v. Martin*, 205 Va. 397, 137 S.E.2d 860 (1964). In estoppel, intent to relinquish is not an element, and knowledge of the facts basic to the exercise of the right may be presumed when the facts are such as to put a reasonably prudent person upon inquiry and prompt him to pursue the inquiry and acquire knowledge. *J. Appleman, Insurance Law and Practice*, § 9081 (1968).

Confusion between the two doctrines results from the use of such terms as "quasi waiver", "constructive waiver" and "implied waiver", i.e., waiver inferred from a course of action or inaction. Since knowing intent to waive is an essential element of true waiver, it can never arise constructively or by implication. A waiver implied is more precisely an estoppel applied. "Estoppel by waiver", a term often used interchangeably with the term "implied waiver", is another form of estoppel applied.

Yet another form of estoppel is that descriptively labelled "estoppel by inconsistent positions". One who has, with knowledge of the options open to him, elected to assume one position is thereafter estopped to assume an inconsistent position to the prejudice of another who has been led to rely upon his first position. *See Thrasher v. Thrasher*, 210 Va. 624, 172 S.E.2d 771 (1970).

Here, the doctrine of waiver is inapplicable; the knowing intent to waive by any of Great American's agents was not established by the evidence.

But, eschewing the term "implied waiver" and variant terms, we hold that Great American is estopped to exercise, as it sought to do in its answer to Employers' bill, a right to rescind Howard's insurance contract *ab initio*.

To reach that holding we need not decide that Great American had actual knowledge of Howard's fraud. We need only decide that, in ample time to protect itself, Great American acquired knowledge of facts sufficient to put a reasonably prudent person upon inquiry of the possibility of fraud, and knowledge must, therefore, be presumed. *J. Appleman, Insurance Law and Practice, supra*, § 9081.

Yet, we believe that more than a presumption of knowledge appears from the evidence below. In *State Farm Mut. Auto. Ins. Co. v. Miller*, 194 Va. 589, 593, 74 S.E.2d 145, 147 (1953), we reaffirmed our approval of the principle stated in *Coles v. Jefferson Ins. Co.*, 41 W. Va. 261, 265-66, 23 S.E. 732, 733 (1895) that:

"The insurance agent, within the general scope of the business he transacts, is *pro hac vice* the insurance company. What he knows, they know. What he does, they do."

And in *Harrison* v. *The Provident Relief Ass'n*, 141 Va. 659, 669-670, 126 S.E. 696, 699 (1925) we said:

"The rule is well stated in a note to *Johnson* v. *Aetna Ins. Co.*, 107 Am. St. Rep. 92, where it is said: 'The general rule of law imputing to a principal notice given to or possessed by his agent applies to insurers not less than to other principals.' "

The evidence shows that Burke, the agent who accepted Howard's application, had power to recover the policy and "cancel flat". When he accepted the application, he heard Howard say that "he had never had any convictions or violations of any type". On September 4, 1970 Burke received from Hall a copy of Howard's driving record showing two speeding convictions. Burke was aware of company policy not to insure drivers with such a record. At that point, Burke's knowledge of Howard's fraud was imputed to Great American.[3] This was some 11 days before the collision.

" 'When a party intends to repudiate a contract on the ground of fraud, he should do so as soon as he discovers the fraud. . . . Prompt action is essential when one believes himself entitled to a rescission of a contract.' [citations omitted]" *White* v. *Bott*, 158 Va. 442, 448, 158 S.E. 880, 881 (1931), quoting *Finch* v. *Garrett*, 109 Va. 114, 115, 63 S.E. 417, 418 (1909).

In *Dobie* v. *Sears, Roebuck & Co.*, 164 Va. 464, 470, 180 S.E. 289, 291 (1935), we said that the right to rescind cannot be exercised "[i]f after discovery or knowledge of facts which would entitle a

---

[3] Great American argues that the rule imputing the agent's knowledge to the insurance company applies only to knowledge on the date the policy was issued. The several opinions cited dealt with an agent's knowledge on the date of issue; but none held that knowledge subsequently acquired was not imputable to the insurance company. We must presume, in the absence of evidence to the contrary, that when an agent, acting within the scope of his agency, receives information materially related to the discharge of his duties for the principal, he will take the appropriate action warranted by the proper discharge of those duties. An agent is not relieved of his obligations to his principal, when the policy is issued.

party to rescind, he treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect . . ."

■ The party relying on the doctrine of estoppel must prove each element by "clear, precise and unequivocal evidence". *John Hancock Mut. Life Ins. Co.* v. *Virginia Nat'l Bank*, 212 Va. 31, 33, 181 S.E.2d 618, 620 (1971). The evidence concerning Great American's discovery of Howard's fraud and its conduct thereafter meets that mandate. At no time during the 11 day period did Great American advise Howard that it was contemplating either rescission *ab initio* or cancellation prospectively. During that period and on the day of the collision Howard believed that he was fully insured. Had he been given notice otherwise, he could have protected himself by acquiring insurance coverage from another company, either directly or through the assigned risk plan; and during the time he remained uninsured he could have protected himself simply by refraining from driving his automobile.

Great American had a known right to rescind *ab initio* Howard's policy well before the collision activated its incipient contract liability. Relying on what Great American's course of inaction led him to believe was a subsisting contractual obligation, Howard lost an opportunity to protect himself against personal tort liability. After the collision triggered Great American's contractual commitment, it became estopped to change its position to benefit itself to Howard's detriment.

The trial court erred when it declared that Great American does not owe coverage to Howard on the date of the collision. The judgment is reversed and final judgment will be entered here for Employers.

*Reversed and final judgment.*