56 F.3d 60
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Michael A. BARLOW, Plaintiff-Appellant,
v.
NEW YORK LIFE INSURANCE COMPANY, Defendant-Appellee,
and
Roy E. BROWN, Defendant.
 No. 94-1930.
 United States Court of Appeals, Fourth Circuit.
 Argued April 6, 1995.
Decided May 23, 1995.
 
 ARGUED: Joel Steinberg, Fairfax, VA, for appellant. Thomas John Cawley, Hunton & Williams, Fairfax, VA, for appellee. ON BRIEF: Stuart A. Raphael, Hunton & Williams, Fairfax, VA, for appellee.
 Before NIEMEYER and MOTZ, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 This diversity case arises out of the rescission by New York Life Insurance Company of a disability insurance policy issued to Michael A. Barlow. A jury returned a verdict in favor of New York Life on Barlow's breach of contract claim, and Barlow appeals. Finding no reversible error, we affirm.
 
 I.
 
 2
 On October 9, 1989, Barlow, a citizen of Virginia, applied for a disability insurance policy with New York Life, a New York corporation. With the assistance of one of New York Life's agents, Barlow completed and submitted an application for insurance, which included information about his past medical history. Relying on the information contained in Barlow's application, New York Life issued a policy which provided "total disability" coverage in the event Barlow could not do "the substantial and material duties of[his] regular job."
 
 
 3
 On December 18, 1990, after allegedly suffering a series of epileptic seizures, Barlow filed a claim under the policy. In the course of investigating the claim, however, New York Life discovered certain inaccuracies contained in Barlow's application. Accordingly, on June 6, 1991, New York Life rejected Barlow's claim and rescinded his policy. Barlow subsequently brought this breach of contract action, seeking damages and declaratory judgment.
 
 
 4
 At trial, Barlow acknowledged that he had injured his back and neck in a home accident prior to 1989, for which he received medical consultation and treatment. He and his wife testified that they reported this information to New York Life's agent, Roy Brown, when Brown took Barlow's application for insurance, but that Brown declined to record the information in the application because it was not "serious" enough to warrant disclosure. Brown, on the other hand, testified that Barlow never disclosed this information to him during their meeting and that he correctly recorded Barlow's answers on the application. Barlow signed the application without reading it, representing that all of the statements contained in the application were "correctly recorded and are complete and true to the best of the knowledge and belief of those who made them."
 
 
 5
 Furthermore, although Barlow's initial application failed to specify whether he had a personal physician, New York Life later noted in its records that its agent had called on October 23, 1989 to advise that Barlow in fact had none; an amendment to the policy was prepared to reflect this information. Two days later, Equifax Services, an insurance investigation firm, conducted a telephone interview on behalf of New York Life to confirm certain information contained in Barlow's application. The report prepared by Equifax indicated that during the interview Barlow disclosed that he had a personal physician whom he had last seen on an unspecified date in October of that year for an injured finger.
 
 
 6
 Nevertheless, New York Life proceeded to issue Barlow's disability insurance policy effective October 9, 1989. The policy issued to Barlow contained the following disclaimer:
 
 
 7
 Important notice concerning statements in the application for insurance. Please read the copy of the application attached to this policy. Omissions or misstatements in the application could cause an otherwise valid claim to be denied or the policy to be rescinded. Carefully check the application and write to the Company within 10 days after delivery if any information shown is not correct and complete or if any medical history has not been included. The application is part of this insurance policy and this insurance policy was issued on the basis that the answers to all questions and any other material information shown are correct and complete. However, upon receipt of the policy Barlow failed to report any omissions or misstatements in his application.
 
 
 8
 Barlow moved for judgment as a matter of law, which the district court denied. The jury returned a general verdict in favor of New York Life, and this appeal followed.
 
 II.
 
 9
 Barlow first contends that the district court erred in denying his motion for judgment as a matter of law. In reviewing the denial of such a motion, an appellate court must view "all of the evidence in the light most favorable to [the nonmoving party], drawing all reasonable inferences in [that party's favor]." Johnson v. Hugo's Skateway, 974 F.2d 1408, 1412 (4th Cir.1992) (en banc ). If there is "substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the nonmoving party, the motion should be denied." Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891 (4th Cir.1980); see also Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 660-61 (4th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 443 (1993). An appellate court is expressly prohibited from weighing the evidence or assessing the credibility of witnesses. Taylor v. Home Ins. Co., 777 F.2d 849, 854 (4th Cir.1985), cert. denied, 476 U.S. 1142 (1986). We review the decision of the district court de novo. Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir.1985).
 
 
 10
 Barlow argues that New York Life was precluded from prevailing as a matter of law because it was on constructive notice of any misrepresentations contained in his application for insurance. He contends that because New York Life was aware of the discrepancy between his initial application, which failed to indicate whether or not he had a personal physician, and the Equifax report, which noted that he had a personal physician whom he had last seen sometime in October, 1989, New York Life had an affirmative "duty to inquire" as to the reason for the conflict. He asserts that had New York Life followed up on this discrepancy and contacted his physician, it would have discovered the medical history that it claims was omitted from the application.
 
 
 11
 In Pennsylvania Cas. Co. v. Simopoulos, 369 S.E.2d 166 (Va.1988), the Supreme Court of Virginia recognized that where an insurer has " 'knowledge of facts sufficient to put a reasonably prudent person upon inquiry of the possibility of fraud,' " the insurer is estopped from relying on such fraud to rescind a policy. Id. at 168-69 (quoting Employers Commercial Union Ins. Co. of America v. Great American Ins. Co., 200 S.E.2d 560, 563 (Va.1973)). The court noted that "[t]he burden 'rests upon the party relying on the doctrine of estoppel to prove each element by clear, precise and unequivocal evidence,' " id. at 169 (quoting John Hancock Mutual Life Ins. Co. v. Virginia Nat. Bank, 181 S.E.2d 618, 620 (Va.1971)), and that this burden requires the insured to demonstrate that the insurer "had knowledge, actual or imputed, of facts which would render its coverage void ab initio, yet issued the policies in question notwithstanding such knowledge." Id. (citing North River Ins. Co. v. Belcher, 155 S.E. 699, 703 (Va.1930)) (footnote omitted). There, the "facts" allegedly putting the insurer "upon inquiry of the possibility of fraud" consisted of certain unanswered questions on the insured's application for insurance; the court held that this was insufficient to estop the insurer from prevailing. Id.
 
 
 12
 Here, the "facts" that allegedly put New York Life "upon inquiry of the possibility of fraud" were Barlow's assertedly contradictory responses as to whether he had a personal physician. On Barlow's initial application no response was indicated; the question asking him to identify his personal physician was simply left blank. New York Life's agent subsequently advised its underwriting department that Barlow did not have a personal physician and that the correct response to the question was "none"; an amendment to the policy was prepared to reflect that response. However, during his telephone interview with Equifax, Barlow indicated that he did have a personal physician whom he had last seen in October, 1989 for a "hurt finger."
 
 
 13
 Although there was clearly a discrepancy between Barlow's initial application and the Equifax report in that respect, it was not such that would "put a reasonably prudent person upon inquiry of the possibility of fraud." The Equifax report indicated that Barlow's "personal physician" was "last seen" in October, 1989. The report did not specify when in October Barlow saw this physician, whether it was before or after the date he submitted his initial application for insurance, nor did it indicate whether Barlow had ever seen this physician any time prior to October, 1989, when he was simply treated for a "hurt finger." In addition, the Equifax report indicated that Barlow was not "presently under medication or treatment," and the report did not disclose "[a]ny other illness, injury, or operation." Under these circumstances, Barlow has failed to demonstrate that New York Life "had knowledge, actual or imputed, of facts which would render its coverage void ab initio." 369 S.E.2d at 169.
 
 
 14
 The case on which Barlow principally relies, Major Oil Corp. v. Equitable Life Assurance Society, 457 F.2d 596 (10th Cir.1972), is easily distinguishable. There, the insurance company sought to rescind a policy because of the insured's misrepresentations concerning his alcoholism. However, the insurer's agents had been specifically informed about the insured's drinking problem and the fact that he had been hospitalized as a result. In addition, the insurer's medical investigating firm specifically identified the insured as having a drinking problem, and another insurance company even advised the insurer that the insured's alcohol problem seemed to render him uninsurable, warning that the insurer should take a "hard look at it" before issuing the policy. Nevertheless, the insurer issued the policy, and the Tenth Circuit held that the insurer was consequently estopped from rescinding the policy on the basis of fraud. The court stated that "[i]t would be difficult to imagine a case where an insurance company could have more notice than did [the insurer] that the insured had given false answers in his application." Id. at 604.
 
 
 15
 Here, in contrast, New York Life did not have actual notice of Barlow's past medical history, and it cannot be charged with constructive notice of that information where there was no impetus for further inquiry. Cf. Foremost Guaranty Corp. v. Meritor Sav. Bank, 910 F.2d 118, 127 (4th Cir.1990) ("It is true that we equate the knowledge the insurers could have gained through reasonable inquiry with actual knowledge of facts sufficient to defeat their right to rescind. Such reasoning is not new; indeed, the authority supporting this proposition is overwhelming."). Certainly New York Life had no affirmative "duty to inquire" beyond that which it actually undertook in this case.
 
 
 16
 In any event, as the Virginia Supreme Court noted in Simopoulos, "[e]stoppel is an equitable doctrine, and one cannot 'base a claim for an estoppel upon acts or conduct which were induced by his own acts, and a fortiori on those induced by his own fraud or false representations.' " 369 S.E.2d at 169 (quoting Luck Constr. Co. v. Russell County, 79 S.E. 393, 395 (Va.1913)). The court therefore held that "[b]ecause [the insured] had unclean hands, he had no standing in equity to interpose a plea of estoppel." Id.; see also Nationwide Ins. Co. v. Patterson, 331 S.E.2d 490, 492 (Va.1985) ("Finally, the cases are clear that, in Virginia, one cannot, by fraud and deceit, induce another to enter into a contract to his disadvantage, then escape liability by saying that the party to whom the misrepresentation was made was negligent in failing to learn the truth."). Similarly, where there was evidence from which a jury could conclude that Barlow misrepresented or omitted information about his prior medical condition on his application for insurance, under Virginia law he was precluded from asserting in equity New York Life's failure to investigate the truth.[1] Accordingly, the district court did not err in denying Barlow's motion for judgment as a matter of law.
 
 III.
 
 17
 Barlow next contends that the district court erred with respect to certain of its instructions to the jury. A judgment will be reversed for error in jury instructions if, "in the 'context of the overall charge' " and "[v]iewing the record as a whole," the charge was misleading and contained an inadequate statement of the law to guide the jury's determination. Western Air Lines, Inc. v. Criswell, 472 U.S. 400, 420-21 (1985) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).
 
 
 18
 Barlow asserts that under Virginia law he was legally entitled to recover on his claim against New York Life had the jury credited his testimony and that of his wife. See, e.g., Reserve Life Ins. Co. v. Ferebee, 118 S.E.2d 675 (Va.1961); Green v. Southwestern Voluntary Ass'n, Inc., 20 S.E.2d 694 (Va.1942). He argues that the instructions administered by the district court did not accurately reflect Virginia law. Accordingly, he assigns error to the following instructions:
 
 
 19
 Now, if you would find that New York Life has proved that the plaintiff supplied information in the application from the policy regarding his past medical history and that one or more of those statements were false when made, then the plaintiff cannot recover.
 
 
 20
 If it is proven that the answers in the application were false, then there is a presumption that the plaintiff knew the answers were false. And the burden then shifts to the plaintiff to come forward with evidence to prove that each of the answers were truthfully given by him but falsely recorded by the agent and that the plaintiff did not know or have reason to know that the application signed by him actually contained false answers.
 
 
 21
 (Emphasis added).
 
 
 22
 Barlow contends that the district court's instructions failed to indicate that misrepresentations contained in the insurance application had to be "knowingly" made and that New York Life had the ultimate burden of proving that element. It is true that under Virginia law, New York Life had the affirmative burden of clearly proving that Barlow's representations were untrue and that they were material. Time Ins. Co. v. Bishop, 425 S.E.2d 489, 491 (Va.1993). In addition, because Barlow's application recited that his answers were true and correct "to the best of [his] knowledge and belief," New York Life had the "further burden" of establishing that Barlow's false statements were "knowingly" made. Id. at 492. However, "in the absence of peculiar circumstances, there is a presumption that the applicant has read the application which he signed and he is prima facie charged with knowledge of its contents, but this presumption may be rebutted." New York Life Ins. Co. v. Eicher, 93 S.E.2d 269, 273 (Va.1956). As the Supreme Court of Virginia observed in a case similar to this, "[i]t was incumbent upon [the insured] to rebut the presumption that he knew his application contained false answers and in rebutting this presumption, it was incumbent upon [him] to prove that the answers were truthfully given by him to the [insurer's agent], who incorrectly recorded them." Mutual of Omaha Ins. Co. v. Dingus, 250 S.E.2d 352, 356 (Va.1979).
 
 
 23
 Upon close examination, it is clear that the instructions administered in this case, taken as a whole, adequately stated the law. Although not explicitly identified as an element of proof, Barlow's knowledge was sufficiently implicated in the instructions to satisfy the requirement in Dingus that, once New York Life proved that the answers contained in the application were false, Barlow then had the burden of showing that he "did not know or have reason to know that the application signed by him actually contained false answers." And while the Supreme Court of Virginia in Bishop clearly placed upon the insurer the ultimate burden of proving the insured's state of mind, it did not purport to alter the rule articulated in Dingus that an insured is presumed to know the contents of his or her signed application and that any misrepresentation contained in such an application is similarly presumed to have been knowingly made.[2]
 
 
 24
 Moreover, even if the district court's failure to instruct more precisely on New York Life's ultimate burden in this respect constituted error, Barlow was not prejudiced by this mistake. Barlow never argued at trial, nor does he urge on appeal, that the misrepresentations contained in the application were not "knowingly" made; rather, he maintains that he never made any misrepresentations at all. Because Barlow's knowledge was never a contested issue in the case, the court's failure to instruct on that issue does not warrant reversal. Accordingly, the jury was properly instructed that New York Life had the burden of proving that Barlow supplied the information contained in the application, that Barlow was presumed to know that his application contained misrepresentations, and that, in order to recover on his claim, Barlow was then required to show that New York Life's agent incorrectly recorded his otherwise truthful responses. See Wellington v. Daniels, 717 F.2d 932, 938 (4th Cir.1983) (reversal is required "only if the error is determined to have been prejudicial, based on a review of the record as a whole").
 
 
 25
 Aside from whether the burden of proving Barlow's knowledge was properly allocated, the court's instruction that Barlow was required to show that he "did not know or have reason to know that the application signed by him actually contained false answers" could be troublesome for another reason. Arguably, a jury closely adhering to this instruction could have found against Barlow even if it fully credited his testimony that he truthfully disclosed the required information to New York Life's agent, because, as stated above, Barlow was presumed to know that "the application signed by him actually contained false answers" insofar as those answers were not the answers that he originally gave to the agent.
 
 
 26
 However, Barlow never specifically objected to this portion of the instructions at trial, nor did he ever articulate a basis for such an objection, and thus he has waived the issue on appeal. Fed.R.Civ.P. 51; see also City of Richmond, Va. v. Madison Management Group, Inc., 918 F.2d 438, 453-54 (4th Cir.1990).[3] Indeed, with regard to this precise issue Barlow proposed to the district court an additional instruction on estoppel, which the court administered verbatim as follows:
 
 
 27
 Now, where a person applying for insurance gives full, true and correct answers relying upon the skill and honesty and good faith of the company's agent to fill out the application correctly, and such agent makes out the application incorrectly or inserts different answers from those given or false answers, the company cannot take advantage of that. If the applicant is ignorant of the discrepancy or wrongful act of the agent, he is entitled to recover on the policy.
 
 
 28
 This instruction immediately followed the instruction to which Barlow now objects, and he conceded at oral argument before us that it was properly administered to the jury. His contention on appeal is simply that where this correct instruction was administered together with the assertedly incorrect one as to burden of proof, reversal is required. We have already concluded, however, that the first instruction was not erroneous and in any event caused Barlow no prejudice.
 
 IV.
 
 29
 Finally, Barlow contends that the district court erred in excluding certain expert testimony regarding signature comparison and the underwriting process generally. Whether to allow expert testimony is a question committed to the discretion of the trial judge, and our review determines only whether this discretion has been abused. Sparks v. Gilley Trucking Co., Inc., 992 F.2d 50, 53 (4th Cir.1993). There was no such abuse here. See Salem v. United States Lines Co., 370 U.S. 31, 35 (1962) ("the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous").
 
 
 30
 Accordingly, the judgment of the district court is
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 For this reason, Barlow's argument that the district court erred by refusing to administer his proposed instruction on New York Life's "duty to inquire" is similarly meritless
 
 
 [2]
 Indeed, rather than reversing or limiting Dingus, Bishop cited Dingus approvingly, albeit for a different proposition. 425 S.E.2d at 491
 
 
 [3]
 Similarly, Barlow has waived his argument that the district court erred in instructing the jury that "all persons who sign insurance policy applications have a legal duty to read the application." Although he now contends that, in light of his admission that he failed to read New York Life's application before signing it, the instruction "likely caused [the jury] to render a verdict for [New York Life]," he never articulated this basis for objection at trial, as required by Fed.R.Civ.P. 51 ("No party may assign as error the giving or the failure to give an instruction unless that party objects thereto ... stating distinctly the matter objected to and the grounds of the objection.") (emphasis added). In any event, taken as a whole the instructions were not erroneous