## CIRCUIT COURT OF FAIRFAX COUNTY

Best Medical
International, Inc., et al.

v.

Wells Fargo, Inc., N.A.

December 6, 2011

Case No. CL-2010-10997,
consolidated with Case Nos. CL-2010-9395
and CL-2010-9414

BY JUDGE LORRAINE NORDLUND

This matter came before the Court on the Defendant's Plea in Bar to Plaintiffs' Fourth Amended Complaint. The Plea relates only to Count IV, Plaintiffs breach of contract claim, which is the only claim to have survived the Defendant's most recent demurrer. After hearing evidence and argument presented by both parties on Wednesday, October 26, 2011, the Court took the matter under advisement. The Court requested supplemental briefs regarding what knowledge is necessary under Virginia law to enter a valid waiver and whether the Plaintiffs acquired that knowledge prior to signing the July 31, 2009, Waiver and Amendment Agreement.

For the following reasons, the Court grants the Defendant's Plea in Bar and dismisses this cause with prejudice.

*Facts*

This case arises out of a dispute between Mr. Krishnan Suthanthiran and his four companies, Best Medical Industries, Best Medical International, Gunston Hall Realty, and Huestis Machine Corp. (collectively "Best

Medical"), and Wells Fargo, Inc., as successor in interest to Wachovia. The Plaintiffs have alleged multiple causes of action against Wells Fargo throughout the pendency of this case, all related to commercial loans obtained from Wachovia.

In support of their claim under Count IV, titled "Breach of Contract as to Defendant Relative to the Huestis Financing and Security Agreement," Best Medical avers that, on or about May 8, 2009, Wells Fargo informed the Plaintiffs that they were in breach of the Huestis Financing and Security Agreement (FSA) for failing to provide audited financial statements and failing to demonstrate that their debt service coverage ratio was not less than 1.25 to 1.00. Complaint ¶ 64. Plaintiffs allege that Wells Fargo itself was in breach of the FSA, because it did not provide them with an opportunity, as they contend Section 7.1.1 of the FSA requires, to cure these "technical, immaterial issues." Complaint ¶ 63. Plaintiffs also argue that there would be no breach of the FSA had Wells Fargo not fraudulently induced them to sign a Swap Agreement in December 2006. This argument is now moot, because the Court dismissed a separate fraud in the inducement count related to the Swap Agreement on October 26, 2011.

As alleged, the breach of contract count also rests on claims contained in other counts which have been dismissed by the Court. These include racial discrimination under the Virginia Equal Credit Opportunity Act (alleged in various forms and the subject of orders entered April 27, 2011, May 24, 2011, and June 8, 2011) and breach of the Swap Agreement (Count V of the Second Amended Complaint, which was dismissed with prejudice in a letter opinion dated April 27, 2011)█ Thus, the only remaining bases alleged in the breach of contract count are Wells Fargo's failing to provide the opportunity to cure alleged defaults, requiring Best Medical to sign the WAA, and attempting to foreclose on Best Medical's businesses under the FSA.

On July 31, 2009, the parties entered into a Waiver and Amendment Agreement (WAA) whereby Wells Fargo agreed to waive "existing events of default" if Plaintiffs would agree to certain additional terms. Specifically, Plaintiffs agreed to "release and forever discharge" Wells Fargo:

> from any and all manner of action and actions, cause and causes of action, suits, debts, torts, controversies, damages, judgments, executions, recoupments, claims and demands whatsoever, asserted or unasserted, in law or in equity which, against any Lender Affiliate, any Obligor Affiliate ever had or now has by reason of any matter, cause, causes, or thing whatsoever, including, without limitation, any presently existing claim, recoupment, or defense, whether or not presently suspected, contemplated, or anticipated.

WAA ¶ 26.

Further, in signing the WAA, Plaintiffs represented to Wells Fargo that each:

> has freely and voluntarily entered into this Agreement after an adequate opportunity and sufficient period of time to review, analyze, and discuss all terms and conditions of this Agreement and all factual and legal matters relevant thereto with counsel freely and independently chosen by it. Each Obligor further acknowledges that it has actively and with full understanding participated in the negotiation of this Agreement after consultation and review with its counsel and that this Agreement has been negotiated, prepared, and executed without fraud, duress, undue influence, or coercion of any kind or nature whatsoever having been exerted by or imposed upon any party to this Agreement.

WAA ¶ 25(b).

In the present Plea in Bar, Wells Fargo argues that the general release of claims contained within the WAA bars Best Medical's recovery for breach of contract. Best Medical argues that it did not knowingly and intentionally enter into the WAA and that the waiver's validity is a question of fact that must be decided at trial. Plaintiffs also assert in briefs that part of their breach of contract claim arises from conduct occurring after the WAA was signed and thus some portion of the claim would survive even if the WAA contains a valid waiver.

### Analysis

A plea in bar is a "defensive pleading that reduces the litigation to a single issue." *Cooper Industries v. Melendez*, 260 Va. 578, 590, 537 S.E.2d 580 (2000) (citations omitted). If that single issue is proven, it "creates a bar to the plaintiff's right of recovery" and ability to proceed with the action. *Id.* At this stage, the moving party bears the burden of establishing the truth of that factual issue. *Weichert Co. v. First Commercial Bank*, 246 Va. 108, 109, 431 S.E.2d 308 (1993). However, "the facts as stated in the plaintiff's pleadings are taken as true for the purpose of resolving the special plea." *Lostrangio v. Laingford*, 261 Va. 495, 497, 544 S.E.2d 357 (2001). Here, Wells Fargo asserts that the waiver contained in the WAA constitutes a general release of claims and bars Best Medical's ability to proceed on a breach of contract claim. It is therefore appropriate for the Court to consider this issue at the plea in bar stage rather than leaving the matter to be decided at trial as Plaintiffs contend.

It is well established that the party relying on a waiver has the burden "to prove the essentials of such waiver . . . by clear, precise, and unequivocal evidence." *Utica Mut. Ins. Co. v. National Indem. Co*, 210 Va. 769, 773,

173 S.E.2d 855 (1970). However, as with any other contract, the Court must consider and enforce the unambiguous terms of a waiver agreement. Applying Virginia law, the Fourth Circuit has observed that "a release is just another contract in which the intent of the parties is to be derived from the face of the instrument viewed as a whole." *Virginia Impression Products Co. v. SCM Corp.*, 448 F.2d 262, 265 (4th Cir. 1971) (citing *Worrie v. Boze*, 191 Va. 916, 62 S.E.2d 876 (1951)). As this Court has noted, "it is the role of the judiciary to enforce, and when necessary, interpret the terms of a contract but not to write, or rewrite, a contract for the parties." *Fairfax Co. of Va., L.L.C. v. Samson Realty, L.L.C.*, 74 Va. Cir. 141, 145 (Fairfax 2007) (Klein, J.) (citing *Graphic Arts Mut. Ins., Co. v. Warthen Co.*, 240 Va. 457, 460, 397 S.E.2d 876 (1990)). "It is axiomatic in Virginia that courts are bound to conclude that the parties intend what their written contracts plainly declare." *Id.* (citing *W. F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc.*, 203 Va. 259, 264, 123 S.E.2d 377 (1962)).

In Virginia, "waiver is an intentional relinquishment of a known right." *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 74, 306 S.E.2d 870 (1983). To establish waiver, two elements must be proven: "knowledge of the facts basic to the exercise of the right and the intent to relinquish that right." *Employers Commercial Union Ins. Co. of Am. v. Great Am. Ins. Co.*, 214 Va. 410, 412-13, 200 S.E.2d 560 (1973); *accord Horton v. Horton*, 254 Va. 111, 117, 487 S.E.2d 200 (1997); *Stanley's Cafeteria*, 226 Va. at 74. This is not to say that a party cannot waive the unknown. Virginia law allows a party to enter into a general release of claims and:

absorb the risk of having "inferior knowledge" by agreeing to release any and all claims, regardless of whether the claims were "known or unknown." For that clause to have any significance, the parties have to assume, or at least bear the risk, that there are existing, unknown claims at the time they enter into the agreement.

*Noell Crane Sys. GmbH v. Noell Crane & Serv.*, 677 F. Supp. 2d 852, 873 (E.D. Va. 2009).

At the Plea in Bar hearing, Best Medical argued that it lacked the requisite knowledge of basic facts surrounding the waiver as well as the intention to relinquish any right to bring a breach of contract claim. In making this argument, Best Medical relied upon facts external to the waiver itself. Wells Fargo argued in turn that it need only point to the plain language of the waiver to show that Plaintiffs had both the knowledge and intent required by law when entering into the WAA. The clear and unambiguous terms of the WAA state that Best Medical intended to abandon "any and all manner of action" whether known or unknown in return for Wells Fargo's waiver of certain events of default on Best Medical's commercial loans. WAA ¶ 26. Though the parties did not enumerate specific claims or actions Best

Medical might possess by way of example, the Court finds it significant that the parties chose to include the broad language of a general release when drafting the WAA.

It is equally clear from the face of the document that Best Medical had full knowledge of the comprehensive release provisions of the WAA and was well informed of their meaning. Best Medical acknowledged that it "actively and with full understanding participated in the negotiation" of the waiver with the assistance of counsel. WAA ¶ 25(b) (set out more fully above).

Despite the clarity of this language, Plaintiffs argued and presented evidence at the Plea in Bar hearing that they lacked the requisite knowledge and intent. Wells Fargo objected to this evidence on the grounds that the Court may not hear or consider parol evidence regarding the terms of a complete, unambiguous written contract. *See Price v. Taylor*, 251 Va. 82, 86, 466 S.E.2d 87 (1996). "When a claim is made under an unambiguous written instrument, however, a signatory to the instrument may introduce parol evidence to establish a defense based on such doctrines as partial integration, collateral contract, fraudulent procurement, mutual mistake, or condition precedent." *Id.* at 86-87. (citing *Shevel's, Inc. v. Southeastern Associates, Inc.*, 228 Va. 175, 182, 320 S.E.2d 339 (1984)). Here, the Court determined that it was appropriate to consider parol evidence, because Best Medical challenged the validity of the WAA under a fraud in the inducement theory. Plaintiffs asserted that, due to Wells Fargo's fraud, they did not have the requisite knowledge and were unable to form the intent to enter into a valid waiver. The Court therefore heard Best Medical's evidence as well as testimony from Wells Fargo's witness on the subject.

Best Medical presented testimony and argument at the Plea in Bar hearing related almost entirely to its claim that the 2006 Swap Agreement was fraudulently induced through failure to disclose certain information and that the fraud in turn led to the need for the WAA. Again, the Court has already dismissed that Count with prejudice. Richard M. Pollack, who served as counsel to Wachovia throughout the WAA negotiations, testified that Best Medical did in fact take advantage of the opportunity to "analyze and discuss all terms and conditions of this Agreement . . . with counsel freely and independently chosen." WAA ¶ 25(b). Mr. Pollack confirmed that Best Medical participated in the negotiations for months, requesting changes and actively drafting and rewording portions of the final document. The evidence showed that the WAA went through multiple revisions in light of Plaintiffs' concerns about their credit standing and future borrowing ability.

The testimony established that the WAA had originally been drafted as an acknowledgement of default and waiver of rights. Best Medical responded during negotiations that such a document would affect its other business relationships. As such, Best Medical specifically requested that the

document be re-drafted as an amendment agreement rather than a default instrument. Wells Fargo acquiesced.

For these reasons, the Court must conclude that Best Medical acted with "knowledge of the facts basic to the exercise of the right and the intent to relinquish that right" when it signed the WAA and waived certain causes of action. *Employers Commercial Union Ins. Co. of Am.*, 214 Va. at 412-13.

Turning to the Complaint, the Court must point out that the breach of contract claim in large part rests on allegations that form the basis of counts previously dismissed from the Complaint. These include racial discrimination under the Virginia Equal Credit Opportunity Act, fraud in the inducement of the 2006 Swap Agreement, and breach of the Swap Agreement. Because each of these allegations stands dismissed (as outlined above), the Court need not discuss them further.

The remaining portions of Count IV allege that Wells Fargo breached the FSA by accelerating loan payments and refusing to provide a period to cure the defaults "in violation of reasonable and customary banking practices," breaching the implied duty of good faith and fair dealing, and ignoring "past performance and course in dealing between the parties" as well as trade usage. Complaint ¶¶ 71-78. Because these events necessarily occurred at the time Wells Fargo notified Plaintiffs of their default, prior to the July 31, 2009, waiver, they come within the meaning of "any and all manner of action and actions, cause and causes of action, suits, debts, torts, controversies, damages . . . any Obligor Affiliate ever had or now has" as contemplated by the parties when drafting the waiver. WAA ¶ 26.

Best Medical nonetheless insists that "some of" its breach of contract claim in fact arose after the WAA was signed. That is, even if the WAA contains valid provisions waiving breach of contract claims, the waiver only bars causes of action based upon events which took place prior to the signing of the WAA. Best Medical therefore argues that at least part of Count IV must still survive the Plea in Bar.

The Court disagrees. First, no such subsequent facts have ever been properly pleaded, alleged, or argued. Moreover, the Complaint alleges that Wells Fargo breached the FSA by requiring Best Medical to "agree to the inequitable, unconscionable, and onerous terms of" the WAA and by "wrongly attempt[ing] to foreclose and liquidate Plaintiffs' businesses" under the FSA. Complaint ¶ 78(f), (h). As above, these alleged events of breach necessarily occurred before Plaintiffs signed the WAA and are therefore waived by its unambiguous terms.

Best Medical further alleged that, in "attempting to enforce" the terms of the WAA, Wells Fargo breached the FSA. Complaint ¶ 78(g). The Court finds no merit in this argument. Not only are these two separate contracts, but it is not a breach of contract to enforce the terms of a contract.

Considering the plain meaning of the document and the evidence taken *ore tenus* from both parties, the Court finds that the WAA is valid under

Virginia law. By giving ordinary meaning to the WAA's terms, the Court finds no ambiguities. The Court further finds that Best Medical had the knowledge and intent required by law to execute a valid waiver. Thus, the WAA is enforceable and bars Best Medical's breach of contract claim, leaving no question to be decided at trial. This case is therefore dismissed with prejudice.