UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:    Judges O'Brien, Chaney and Callins
Argued at Alexandria, Virginia


MARLENE MITCHELL

                                                      MEMORANDUM OPINION* BY
v.        Record No. 1419-24-4              JUDGE DOMINIQUE A. CALLINS
                                                      FEBRUARY 24, 2026
ABED J. JAMIL, ET AL.


FROM THE CIRCUIT COURT OF CULPEPER COUNTY
Melvin R. Hughes, Jr., Judge Designate

David W. Thomas (MichieHamlett PLLC, on briefs), for appellant.

Bennett T. W. Eastham (Antonio R. Benedi; Walker Jones, PC, on
briefs), for appellees.


Marlene Mitchell appeals the trial court's judgment awarding Abed J. Jamil

compensatory damages after Marlene claimed the appellees defaulted on a promissory note and

then wrongfully foreclosed on Jamil's property. On appeal, Marlene argues that the trial court

erred because it held that the parties agreed that the promissory note had been paid in full, and

because the statute of frauds prevented an oral modification of the note. Finding no error, we

affirm the trial court's judgment.

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

BACKGROUND[1]

Jamil and Marlene's husband, Roger Mitchell, were friends and next-door neighbors. In March 2008, Jamil borrowed money from Roger to help his son, Omar Abed, purchase a house. Omar used the borrowed money to purchase a house on Executive Lane in Culpeper, Virginia ("House 1"). In July 2008, Omar used House 1 as collateral for a loan to purchase a second house on Executive Lane ("House 2").

To purchase House 2, Omar and his wife, Angela Hart, borrowed a total of $140,000 from Marlene and Roger. Instead of executing a single loan for the entire loan amount, Roger agreed to divide the $140,000 into two loans: a $97,500 loan from Roger, and a $42,500 loan from Marlene. Regarding the latter loan, which is the subject of this litigation, Marlene, Omar, and Angela executed a negotiable promissory note in July 2008; the note was secured by a deed of trust on House 1 ("Mitchell note"). Under the terms of the Mitchell note, Omar and Angela were to make interest-only monthly payments of $354.17 from August 2008 until July 2009, when they were to pay the remaining unpaid principal and interest. The note included a 10% per annum interest rate, escalating to 18% if any interest or principal payment was more than 15 days late.

Although Marlene held the note, Omar and Angela primarily "dealt with" Roger concerning the loan, including submitting their monthly payments in the form of checks delivered and made payable to Roger. They gave their payments to Marlene only when Roger was unavailable.

At some point, Omar spoke to Roger about satisfying the loans prior to the July 2009 maturity date. Omar explained that, although he had secured funding to pay off the $97,500 loan, he had not yet secured funding to pay off the Mitchell note for $42,500. Roger agreed to close the

---

[1] Under familiar appellate principles, we state the facts in the light most favorable to Jamil, the prevailing party in the trial court. *Norfolk S. Ry. Co. v. Sumner*, 297 Va. 35, 37 (2019). Because this opinion discusses facts contained in a sealed record, we unseal only the specific facts stated in this opinion; the remainder of the record remains sealed. *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

$97,500 loan and to allow Omar to continue making payments on the Mitchell note. Jamil later offered to pay off the Mitchell note as well, but Roger told him that "as long [as] your son makes the payments[,] I'm not worried about anything." So Omar and Angela continued to deliver to Roger monthly payments on the Mitchell note.

In 2010, Omar deeded House 1 to Jamil. Omar later approached Roger about a loan for a third property; Roger said he preferred that Omar repay the Mitchell note first. When asked the amount owed on the note, Roger told Omar, "about [$]45,000." Omar delivered a check in the amount of $45,000 to Marlene, telling her that "this is to pay off what Mr. Mitchell said I owed him." Omar later testified that he gave Marlene the check because Roger "wasn't there." Marlene advised that Omar would have to come back to get a receipt from Roger. After notifying Jamil that he had delivered the check to Marlene, Omar and Angela made no further payments to the Mitchells, believing the note paid off.

Omar filed for bankruptcy in 2013. It was during this bankruptcy[2] that he learned that the Mitchells claimed he still owed on the note. Omar, who had moved from Culpeper to Florida, had not received any default notice. Jamil, too, denied receiving any default notice. Later that year, Marlene initiated foreclosure proceedings on House 1, and by March 2014, it had been sold to the Mitchells' son, Andrew, for $18,000 in a foreclosure sale. After applying the proceeds to the balance purportedly owed on the note[3] and to foreclosure costs, a check for $600.99 was mailed to Jamil, which he never cashed.

Jamil, Omar, and Angela sued Marlene, Roger, Andrew, and Roderic Slayton, the substitute trustee on the deed of trust, asking the trial court to cancel the Mitchell note as paid in full, release

---

[2] Omar had also filed for bankruptcy in 2010.

[3] Jamil contends there were at least three errors made, to the benefit of Marlene, in the accounting of the outstanding balance on the note.

the deed of trust, and rescind the foreclosure sale. They also alleged actual or constructive fraud based on the actions of each respective Mitchell and sought punitive damages. Jamil, specifically, sought the return of House 1 or, alternatively, an award of compensatory damages. Marlene filed an answer and plea in bar, denying that the parties had agreed that Omar and Angela could continue making interest-only payments after July 2009 and that the $45,000 payment had satisfied the note. Marlene did not assert a statute of frauds defense in either her answer or plea in bar.

Following a bench trial, the trial court entered final judgment, canceling the note and releasing the deed of trust. The trial court found that "[t]he promissory note at issue was paid in full by the parties['] later course of conduct and dealings." The court further found that the parties' "dealings . . . evince[d] a mutual intent to modify the terms of their written contractual obligations, rights, and duties and excuse[d] and dismiss[ed] terms requiring written modification." The trial court found that the parties' "agreement and assent" that the note had been paid in full "constitute[d] a waiver and settlement of the total amount due with final payment" and, as such, "removed any right to initiate foreclosure proceedings" rendering Marlene's call for foreclosure improper. The court awarded Jamil $133,600 in compensatory damages, with interest, against Marlene alone.[4]

Marlene appeals.[5]

---

[4] The trial court declined, however, to rescind the foreclosure sale or to award punitive damages, as it found that the foreclosure was conducted in substantial and material compliance with the law and that the appellees—Jamil, Omar, and Angela—had not proven fraud by clear and convincing evidence. The court also ruled that they had not sufficiently pleaded and proven a separate independent tort warranting punitive damages in an action based in contract and that Omar and Angela lacked standing to pursue their claims because Jamil owned the property at foreclosure and its sale satisfied their note. The trial court further ruled that Jamil, Omar, and Angela recover nothing from Slayton or Andrew.

[5] Jamil assigns cross-error to the court's ruling on his claim of fraud, and Omar and Angela assign cross-error to the court's rulings on their claims. But their request for review was conditional and dependent on our holding in Marlene's favor. Having rejected Marlene's argument, we do not address the appellees' assignments of cross-error. *See Kirdassi v. White*, 84 Va. App. 260, 297 n.9 (2025).

ANALYSIS

Marlene argues that the appellees failed to present clear and convincing evidence of an agreement to modify the terms of the note and that Roger's statements to Omar were insufficient to modify the note's terms. We disagree.

We begin our analysis mindful that "[w]hen a trial court renders judgment after a bench trial, we cannot set aside that judgment as contrary to the evidence 'unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.'" *Moncrieffe v. Deno*, 76 Va. App. 488, 496 (2023) (quoting Code § 8.01-680). "When judges sit as factfinders, 'no less than jurors,' we give their determinations 'the highest degree of appellate deference.'" *Id.* (quoting *Palmer v. R.A. Yancey Lumber Corp.*, 294 Va. 140, 158 (2017)). "We likewise 'view the evidence and all reasonable inferences drawn from it in the light most favorable to . . . the prevailing party at trial.'" *Id.* (alteration in original) (quoting *Palmer*, 294 Va. at 159).

Whether a contract has been modified by the parties' course of dealing is a question of fact. *John H. MacLin Peanut Co. v. Pretlow & Co.*, 176 Va. 400, 410 (1940). But "we review de novo the purely legal issues of what the terms of a contract are, and how those terms apply to the facts of the case." *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 290 Va. 36, 43 (2015).

In contending that the trial court erred in finding that the parties agreed to modify the terms of the note, Marlene makes two principal arguments: that Jamil and Omar failed to present clear and convincing evidence of an agreement between her and Omar to modify the terms of the note and that Roger's statements to Omar that he could continue to make interest-only payments on the note after its maturity date and later that the payoff would be about $45,000 were insufficient to modify the note's terms. Marlene argues that because Jamil acknowledged that the note payoff exceeded the original $42,500, the appellees' position that Roger agreed to an

extension of the interest-only payments is "internally contradictory." We hold that the evidence supports the trial court's finding that the parties agreed to modify the terms of the note.

A written contract not subject to the statute of frauds[6] "may be dissolved or varied by a new oral contract, which may or may not adopt as part of its terms some or all of the provisions of the original written contract." *Reid v. Boyle*, 259 Va. 356, 369 (2000) (quoting *Zurich Gen. Accident & Liab. Ins. Co. v. Baum*, 159 Va. 404, 409 (1932)). Parties may also modify the contract through a course of dealing showing "a mutual intent to modify the terms of their contract." *Id.* at 370. "The circumstances surrounding the conduct of the parties must be sufficient to support a finding of mutual intention that the modification be effective and such intention must be shown by clear, unequivocal, and convincing evidence, direct or implied." *Id.* "And when one party claims that the other party has surrendered a right guaranteed by the contract, the party asserting such modification must prove either passage of valuable consideration, estoppel *in pais*, or waiver of the right." *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 73 (1983).

"Waiver, a doctrine at law, is voluntary action or inaction with intent to surrender a right *in esse* with knowledge of the facts and circumstances which gave birth to the right." *Emps. Com. Union Ins. Co. v. Great Am. Ins. Co.*, 214 Va. 410, 412 (1973). "In waiver, both knowledge of the facts basic to the exercise of the right and the intent to relinquish that right are essential elements." *Id.* at 412-13. "[A] waiver must be express, or, if it is to be implied, it must

---

[6] Marlene also argues that the statute of frauds bars Jamil's claim. The statute of frauds is an affirmative defense. *See Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 20 (2022) (noting that the affirmative defense of the statute of frauds may be asserted on plea in bar). Having not pleaded the statute of frauds as an affirmative defense, Marlene could not rely on it at trial. *See Monahan v. Obici Med. Mgmt. Servs.*, 271 Va. 621, 632 (2006) (noting the general requirement that "affirmative defenses must be pled in order to be relied upon at trial"). It follows that she may not pursue this forfeited affirmative defense on appeal. Rule 5A:18. Because Marlene is procedurally barred from relying on the statute of frauds, we do not consider this argument.

be established by clear and convincing evidence." *Moncrieffe*, 76 Va. App. at 504 (alteration in original) (quoting *Baumann v. Capozio*, 269 Va. 356, 361 (2005)). "It is, of course, elementary that silence, when there is a duty to speak, may result in the waiver of one's rights or the estoppel to assert them." *RMBS Recovery Holdings, I, LLC v. HSBC Bank USA, N.A.*, 297 Va. 327, 342 (2019) (quoting *Va. Auto Mut. Ins. Co. v. Brillhart*, 187 Va. 336, 349 (1948)).

Here, essentially from the loan's inception, the parties' conduct modified the terms of the note. Even though Marlene was the noteholder, Omar primarily "dealt with" Roger, including delivering monthly payments to him. Omar testified that he continued making interest-only payments to Roger after the maturity date of the note and that he relied on Roger's contemporaneous statements that he would accept the note payments, as well as the payoff of the $97,500 loan. Roger and Marlene accepted interest-only payments and did not notice Jamil, Omar, or Angela of any default on the note. Even when Jamil offered to pay off the note, Roger told him, "[A]s long [as] your son makes the payments[,] I'm not worried about anything."

When Omar later approached Roger about satisfying the loan, Roger told Omar that the balance amount owed was "about [$]45,000." Omar paid that amount to Marlene. Marlene accepted the payment and directed Omar to Roger for a receipt. Omar and Angela made no further payments to the Mitchells. The Mitchells did not notice Omar or Angela that the note remained unsatisfied or that they were in default until two years later when Omar filed for bankruptcy. Marlene offered no testimony contradicting Roger's statements to Omar and Jamil. In fact, Marlene introduced into evidence the appellees' answers to interrogatories, which were consistent with their testimony at trial. The appellees presented sufficient evidence from which the trial court could properly find entirely consistent with a modification of the note's terms, and a waiver and settlement of the total amount due.

We find Marlene's contention that Jamil acknowledged the note payoff exceeded $42,500, unavailing. To the extent Marlene argues that the parties' agreement to continue payments beyond the loan's maturity date is inconsistent with the later pay-off number, this is a challenge to the credibility of the evidence. That credibility determination is one made by the trial court. *See Commonwealth v. Perkins*, 295 Va. 323, 328 (2018) ("The credibility of the witnesses and the weight accorded the evidence are matters *solely for the fact finder* who has the opportunity to see and hear that evidence as it is presented." (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009))); *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006) ("We also accept the trial court's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" (quoting *Walker v. Commonwealth*, 258 Va. 54, 70-71 (1999))).

In response to Interrogatory 1, which asked for "any errors or inaccuracies in the [account] provided to You by the Defend[an]ts," Jamil stated that the amount Marlene claimed was owed on the note in the final accounting was inaccurate under the express terms of the note. Contrary to Marlene's contention, Jamil's answer did not concede that Omar owed additional money on the note beyond the $45,000 payment. Instead, the answer reiterated Jamil's position that no balance was due after the payment of the $45,000 payment that Roger said Omar owed on the note.

The trial court found the parties' course of dealings modified the note's terms and "constitute[d] a waiver and settlement of the total amount due with final payment," and further

that the appellees satisfied the burden of proving waiver.[7] The parties acted consistent with a modification of the note's terms and a waiver and settlement of the total amount due. The years of silence from Marlene and Roger reasonably led Omar and Angela to believe they had paid the note off and thus Marlene waived any right to assert an objection. The trial court's judgment is supported by the evidence, and it did not err in finding the parties had "a mutual intent to modify the terms of their written contractual obligations, rights, and duties" and a "waiver and settlement of the total amount due."

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

---

[7] In her reply brief, Marlene argues that Jamil did not offer evidence that she consented to or ratified Roger's conduct and that the trial court made no finding that Roger acted as her agent. Under Rule 5A:20(e), an appellant's opening brief must contain "the argument (including principles of law and authorities) relating to each assignment of error." Marlene failed to make this argument in her opening brief, and thus fails to comply with Rule 5A:20(e). "[S]tatements unsupported by argument, authority, or citations to the record *do not merit appellate consideration*." *Barnes v. Barnes*, 64 Va. App. 22, 32 (2014) (quoting *Buchanan v. Buchanan*, 14 Va. App. 53, 56, (1992)). Thus, we do not consider this issue.