**TATTOO ART, INC., Plaintiff,**

v.

**TAT INTERNATIONAL, LLC, and Kirk A. Knapp, Defendants.**

**Civil Action No. 2:09cv314.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 14, 2010.

Mark R. Baumgartner, Esq., for Plaintiff.

Stephen E. Noona, Esq., for Defendant.

### *OPINION AND ORDER*

MARK S. DAVIS, District Judge.

This matter is before the Court on Defendants TAT International, LLC ("TAT") and Kirk Knapp's ("Knapp") (collectively "Defendants") Motion to Dismiss and Request for Costs and Attorney's Fees. (Docket Nos. 15 & 16.) The issues have been fully briefed, the parties have presented oral arguments, and the matter is now ripe for decision. For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss and **DENIES** Defendants' Request for Costs and Attorney's Fees.

## I. BACKGROUND

Plaintiff Tattoo Art, Inc. ("Tattoo Art" or "Plaintiff") is a Virginia corporation that is in the business of creating, copyrighting, and selling tattoo flash designs. Defendant TAT is a Michigan-based business, operated and controlled by Defendant Knapp, that creates and sells stencils for use in applying airbrush body art. On December 29, 2005, Tattoo Art and TAT entered into a licensing agreement ("Licensing Agreement" or "the Agreement") granting TAT the exclusive right to create and sell stencils depicting any of the several hundred Tattoo Art designs subject to the Agreement. (Defs.' Mot. to Dismiss, Ex. A.)

In May 2009, Tattoo Art sent TAT a letter terminating the Agreement based on TAT's failure to report sales and pay royalties, and its unauthorized alteration of Tattoo Art's copyrighted work. The termination letter directed TAT to cease and desist all reproduction and sale of Tattoo Art's designs, demanded an accounting of sales conducted pursuant to the agreement, and requested that TAT contact Plaintiff's counsel. Defendant Knapp acknowledged receipt of Plaintiff's termination letter.

After receiving the termination letter, Defendants apparently continued to sell the previously licensed tattoo designs. Upon learning of the continued infringement, Plaintiff attempted to contact the Defendants to negotiate a resolution without initiating litigation. However, at that time, Plaintiff never formally requested that the parties submit the dispute to mediation. Because the Defendants were unresponsive to Plaintiff's efforts to negotiate a resolution, the parties were unable to settle the dispute. The instant lawsuit resulted.

On July 7, 2009, Tattoo Art filed a Complaint alleging that TAT breached the

terms of the Licensing Agreement and that both TAT and Knapp infringed Plaintiff's copyrights.[1] (Docket No. 1.) Even after filing its Complaint, Plaintiff continued to attempt to communicate with the Defendants in an effort to resolve the dispute. Defendants, however, refused to discuss the matter. On August 3, 2009, Defendants contacted Plaintiff to request an extension on the deadline for filing their answer, ostensibly to facilitate an amicable resolution outside of litigation. Plaintiff obliged. In fact, over the next several weeks, Plaintiff agreed to additional extensions for the filing of responsive pleadings in order to permit the parties to resolve the matter amicably. Although, at this time, neither party had requested mediation, both parties appeared interested in negotiating a resolution and avoiding litigation.

On September 23, 2009, the Defendants, for the first time, requested that the parties submit the dispute to formal mediation proceedings. Although Plaintiff advised counsel for the Defendants that it would agree to mediate the matter, mediation never took place, apparently because Defendants failed to respond. Thereafter, on October 12, 2009, the Defendants filed their Answer to Plaintiff's Complaint. (Docket No. 14.) On October 23, 2009, the parties exchanged emails that once again indicated a shared desire to mediate the matter rather than proceed with litigation. (Pl.'s Resp., Ex. 2.) Nevertheless, although both sides genuinely appeared to prefer mediation to litigation, Plaintiff and Defendants disagreed as to whether Tattoo Art would be required to dismiss the Complaint prior to the commencement of such mediation proceedings. In an apparent

effort to ameliorate the Defendants' concerns, Plaintiff offered to agree to a consent order staying further discovery or other proceedings pending mediation or a settlement conference. Defendants did not respond to this offer, and mediation ultimately never took place.

Soon thereafter, Defendants filed the instant Motion to Dismiss and Request for Costs and Attorney's Fees. (Docket Nos. 15 & 16.) Plaintiff subsequently submitted a response, and the Defendants, in turn, filed a reply. (Docket Nos. 19 & 21.) The Court heard oral argument from the parties on the Defendants' motion, and the matter is now ripe for decision.

## II. DISCUSSION

Defendants move for dismissal of Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants argue that the Licensing Agreement expressly requires the parties to request any dispute arising from the Agreement be submitted to mediation prior to initiating litigation. Defendants contend that Plaintiff failed to pursue mediation before filing its Complaint and that the instant lawsuit must therefore be dismissed. Plaintiff disagrees, arguing that Defendants have waived their right to mediation, and, in any event, that Defendant Knapp is not a party to the mediation provision. In addition, Defendants seek an award of costs and attorney's fees pursuant to a provision in the Agreement entitling the "prevailing party" in any action to enforce the Agreement to recoup costs incurred as a result of such action. For the reasons discussed below, the Court finds that because Plaintiff failed to

---

1. Initially, Raser, Inc., ("Raser") was also a defendant in this action. Raser was the internet service provider for TAT. Upon receipt of the Complaint, Raser decided to cooperate with Plaintiff by removing the infringing designs from its system. The complaint against Raser was dismissed on October 27, 2009.

request mediation of the underlying dispute prior to commencing litigation, the instant action must be dismissed. The Court further finds that Defendants are not entitled to an award of costs and attorney's fees as "prevailing part[ies]" in the action because the decision to dismiss is not an adjudication on the merits.

## A.  Applicable Law

At the threshold, because Defendants' Motion to Dismiss and Request for Attorney's Fees requires the Court to construe contractual provisions contained in the Licensing Agreement, the Court must determine which law governs any such interpretation. As the parties included a choice-of-law provision within the Agreement, this question is readily answered. Article XIII of the Licensing Agreement expressly provides that the Agreement "shall be construed in accordance with the laws of the Commonwealth of Virginia." Defs.' Mot. to Dismiss, Ex. A. The enforceability of such choice-of-law provisions depends on the applicable choice-of-law rules. Because jurisdiction in the instant lawsuit is based on both the statute conferring exclusive jurisdiction on federal courts in copyright infringement suits (28 U.S.C. § 1338), and the statute conferring jurisdiction on federal courts in cases involving diversity of citizenship (28 U.S.C. § 1332) (breach of contract), the Court turns to the choice-of-law rules of the forum state to examine the Licensing Agreement's choice-of-law provision. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 155 F.Supp.2d 1, 13 (S.D.N.Y.2001) ("Because jurisdiction in this case is based on diversity of citizenship as well as the presence of federal question, we follow the choice of law rule of New York, the forum state."), *aff'd on other grounds*, 277 F.3d 253 (2d Cir.2002). Here, because the action was filed in a federal court located in Virginia, the Court looks to that state's choice-of-law rules. "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances...." *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir.2007) (citing *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir.1999); *see also Hooper v. Musolino*, 234 Va. 558, 566, 364 S.E.2d 207 (1988); *Tate v. Hain*, 181 Va. 402, 410, 25 S.E.2d 321 (1943)). The parties do not claim, nor does it otherwise appear, that any such unusual circumstances exist in this case. Accordingly, this Court must apply Virginia contract law when interpreting the provisions of the Licensing Agreement.

## B.  Motion to Dismiss

As mentioned above, Defendants move for dismissal on the grounds that Plaintiff failed to pursue mediation prior to filing the instant action. In short, Defendants argue that Plaintiff failed to satisfy a condition precedent that was necessary to trigger the right to commence litigation, namely requesting mediation of the underlying dispute. Analysis of Defendants' motion begins with examination of the mediation provision contained in the Licensing Agreement.

### i.  plaintiff failed to satisfy the condition precedent before commencing litigation

As an initial matter, Defendants and Plaintiff agree that the Licensing Agreement expressly provides that the parties will, at minimum, request mediation of any dispute arising from the Agreement prior to bringing a lawsuit. Indeed, a view to the contrary would be untenable. Article XIII of the Agreement reads, in relevant part, that:

In the event of any dispute arising from this Agreement, the parties agree to

submit the dispute to mediation in Virginia Beach, Virginia, prior to filing any action to enforce this Agreement. In the event that Licensee refuses mediation or mediation is unsuccessful, Licensee consents and agrees to in personam jurisdiction and venue in the United States District Court for the Eastern District of Virginia, located in Norfolk, Virginia, provided such court has jurisdiction of such a dispute, otherwise Licensee consents and agrees to in personam jurisdiction and venue exclusively in the Circuit Court for the City of Virginia Beach, Virginia.

Defs.' Mot. to Dismiss, Ex. A. Defendants now seek to invoke the mediation provision to dismiss the instant lawsuit, arguing that Plaintiff may thereafter pursue mediation and re-file suit if mediation should be refused or ultimately fail.

As discussed above, the mediation provision must be interpreted in accordance with Virginia contract principles.[2] The plain language of the mediation provision unambiguously shows that the parties elected not to be subject to this Court's jurisdiction, at least with respect to any dispute stemming from the Licensing Agreement, until one of the parties either requests mediation and that request is denied or mediation commences and fails. *See, e.g., Landmark HHH, LLC v. Gi Hwa Park,* 277 Va. 50, 55, 671 S.E.2d 143 (2009) ("[W]hen the terms of a contract are clear and unambiguous, a court must give them their plain meaning.") (quoting *Levisa Coal Co. v. Consolidation Coal Co.,* 276 Va. 44, 57, 662 S.E.2d 44 (2008)). Accordingly, when considering Defendants' dismissal motion, the Court must determine whether: (1) the Plaintiff's claims arise out of the Licensing Agreement and thus fall within the mediation provision, and (2) if so, whether Plaintiff satisfied the condition precedent by requesting mediation prior to filing the lawsuit.

■ As to the first question, the Court notes that under the Agreement, the mediation provision applies broadly to "any dispute arising from [the] Agreement." Here, the Plaintiff's Complaint alleges that

**2.** Defendants suggest that the Federal Arbitration Act ("FAA") applies to the Licensing Agreement's mediation provision. The FAA governs "the rights and responsibilities of ... parties with respect to ... arbitration agreement[s]" contained in contracts concerning interstate commerce. *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.,* 380 F.3d 200, 204 (4th Cir.2004) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Although the FAA speaks only in terms of arbitration, courts have interpreted the statutory language broadly to encompass other forms of alternative dispute resolution. *See AMF Inc. v. Brunswick Corp.,* 621 F.Supp. 456, 460 (E.D.N.Y.1985) ("If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration."); *Parisi v. Netlearning, Inc.,* 139 F.Supp.2d 745, 749 (E.D.Va.2001) ("[C]ourts have liberally construed [arbitration] to encompass various diverse dispute settlement mechanisms."). Some courts have found that mediation is a type of alternative dispute resolution falling within the FAA. *Sekisui Ta Industries, LLC v. Quality Tape Supply, Inc.,* Civil Action No. DKC–08–2634, 2009 WL 2170500, *4–5 (D.Md. July 17, 2009); *Fisher v. GE Medical Sys.,* 276 F.Supp.2d 891, 893–94 (M.D.Tenn. 2003). However, others have made compelling arguments that mediation does not fall within the FAA. *See, e.g., Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.,* 524 F.3d 1235 (11th Cir.2008). In any event, it is unnecessary for this Court to decide the issue. Whether the Virginia choice-of-law provision in the Agreement is applied, or whether the FAA's requirement that the Court look to the provisions of the governing agreement is applied, Virginia law is going to apply. Therefore, in either case, the mediation provision must be interpreted in accordance with Virginia contract principles. Moreover, neither party seeks to invoke any rights made available under the FAA, such as the right to compel alternative dispute resolution proceedings.

TAT breached the Licensing Agreement (Count One), and that TAT and Knapp infringed Plaintiff's copyright (Count Two). Both claims undeniably concern a "dispute arising from" the Licensing Agreement. In short, each count alleges that Defendants used Plaintiff's tattoo designs in a manner that violated the terms of the Licensing Agreement. Count One plainly "aris[es] from" the Agreement because it alleges Defendants breached the terms and conditions of the Agreement. Despite alleging a violation of federal copyright law, Count Two also "aris[es] from" the Licensing Agreement because determining whether Defendants infringed Plaintiff's copyright ultimately depends on the rights and privileges granted under the Agreement. Count Two is thus inextricably tied to the Licensing Agreement. Accordingly, the Court finds that, under Article XIII, Plaintiff was required to request mediation of the claims set forth in Counts One and Two of the Complaint before commencing litigation.

■ As to the second question, the Court begins with the proposition that "failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal." *Brosnan v. Dry Cleaning Station, Inc.*, No. C–08–02028, 2008 WL 2388392, at *2 (N.D.Cal. June 6, 2008) (citing *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07–02864, 2007 WL 3232276, *8 (N.D.Cal. Nov. 1, 2007)). A number of courts have found that when parties to a lawsuit have elected not to be subject to a court's jurisdiction until some condition precedent is satisfied, such as mediation, the appropriate remedy is to dismiss the action.[3] *See 3–J Hospitality,*

*LLC v. Big Time Design, Inc.*, No. 09–61077–CIV, 2009 WL 3586830, at *3 (S.D.Fl. Oct. 27, 2009) (holding plaintiff's failure to mediate, which was a condition precedent to litigation, prior to filing suit required dismissal of the case); *Mortimer v. First Mount Vernon Indus. Ass'n*, No. Civ. 03–1051, 2003 WL 23305155, at *3 (D.Md. May 19, 2003) (same); *Ziarno v. Gardner Carton & Douglas, LLP*, No. Civ. A. 03–3880, 2004 WL 838131, at *3 (E.D.Pa. April 8, 2004) (holding that the court lacked subject matter jurisdiction because plaintiff failed to submit the dispute to arbitration, as required by the contract, prior to filing suit). *But see N–Tron Corp. v. Rockwell Automation, Inc.*, No. 09–0733–WS–C, 2010 WL 653760, slip op. at 7–8 (S.D.Ala. February 10, 2008) (deciding to stay rather than dismiss an action in which plaintiff failed to satisfy condition precedent because the statute of limitations had run); *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 298 F.Supp.2d 1, 4–5 (D.D.C.2002) (finding dispute resolution procedure contained in the contract was not a condition precedent because it was not clearly defined as such), *appeal denied,* 333 F.3d 250 (D.C.Cir.2003).

■ Here, Article XIII of the Licensing Agreement unambiguously provides that the parties must, at minimum, request mediation of any dispute arising from the Agreement prior to initiating litigation. Plaintiff does not dispute that it failed to request mediation prior to commencing the instant lawsuit. In fact, it appears that the parties first discussed mediation in Defendants' communication to the Plaintiff on September 23, 2009, some two months after the commencement of the lawsuit. Dismissal is therefore warranted.

---

3. Similarly, in *Kemiron Atlantic, Inc. v. Aguakem Intern., Inc.*, the Eleventh Circuit held that a plaintiff's failure to request mediation, which was a condition precedent to arbitration, prevented the district court from staying the matter and compelling arbitration. 290 F.3d 1287, 1291 (11th Cir.2002).

Arguably, dismissing the instant lawsuit may ultimately prove inefficient and futile because the parties are not required to actually resolve the dispute through mediation. As mentioned above, the parties are merely required to request mediation prior to initiating litigation. Nevertheless, the parties, and most importantly Defendants on whose motion this matter is before the Court, have advised the Court that they intend to approach mediation with good faith. More importantly, by failing to request mediation prior to filing this lawsuit, Plaintiff denied Defendants the benefit of their bargain. As with any other contract, this Court cannot simply ignore the clear intent of the parties.

Accordingly, the Court finds that Plaintiff failed to satisfy the condition precedent necessary to trigger the right to initiate litigation. Defendants' dismissal motion should therefore be granted unless Defendants waived their right to mediation or are for some reason not subject to the Licensing Agreement.

### ii. defendants did not waive their right to mediation

■ Plaintiff's chief contention in opposition to Defendants' motion is that Defendants waived their right to mediation and are thus estopped from using Article XIII as a shield to prevent litigation. Plaintiff's claim must fail. "[W]aiver is an intentional relinquishment of a known right." *Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv.*, 267 Va. 642, 652, 595 S.E.2d 1 (2004) (citing *Stanley's Cafeteria Inc. v. Abramson*, 226 Va. 68, 74, 306 S.E.2d 870 (1983)). Waiver thus consists of two element: (1) "knowledge of the facts basic to the exercise of the right" and (2) "the intent to relinquish that right." *Id.* at 652, 595 S.E.2d 1 (quoting *Employers Commercial Union Ins. Co. of America v. Great American Ins. Co.*, 214 Va. 410, 412–13, 200 S.E.2d 560

(1973)). "The party relying on a waiver has the burden to prove the essentials of such waiver . . . by clear, precise and unequivocal evidence." *Id.* (alteration in original).

■ Plaintiff has failed to point to any act that resembles an intentional relinquishment of Defendants' express right to an offer of mediation prior to the commencement of litigation. Plaintiff asserts that Defendants waived their right to mediation by not submitting the instant Motion to Dismiss until four months after the Complaint had been filed. Plaintiff also claims that, since the filing of the Complaint, the Defendants have rebuffed several offers by Plaintiff to enter into mediation proceedings. Although Plaintiff makes a sympathetic claim that it has been strung along by the Defendants, none of these actions represent an *intentional,* (rather than implied) relinquishment of Defendants' rights under the Licensing Agreement. Moreover, Defendants first expressed their demand for mediation even prior to filing the Motion to Dismiss by including it in their Answer. (Docket No. 14.) Plaintiff was thus on notice as of October 12, 2009, of Defendants desire to mediate the matter. Accordingly, Plaintiff has failed to carry its burden of proving waiver by the Defendants.

Moreover, even if the FAA applied in this context, Defendants still cannot be said to have waived their right to mediation. In cases involving arbitration agreements, the Fourth Circuit Court of Appeals has found that a party waives, or defaults, its right to arbitration only when the party seeking to enforce an arbitration clause "so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing [enforcement of the provision]." *Patten Grading & Paving*, 380 F.3d at 204 (quoting *Maxum Founds., Inc. v. Salus*

*Corp.*, 779 F.2d 974, 981 (4th Cir.1985)) (alteration in original). Plaintiff may therefore arguably attempt to show that Defendants waived their right to mediation by demonstrating that it has been prejudiced by Defendants' trial-oriented activities in this case. However, the only trial-oriented activity in which the Defendants participated was the filing of their Answer and the instant Motion to Dismiss. Such pleadings alone did not substantively prejudice Plaintiff because they do not resolve any of the claims on the merits or provide Defendants with a strategic advantage that may be used during mediation. *See id.* at 206 (finding that trial-oriented activities consisting of three pre-trial motions not on the merits and limited discovery did not warrant waiver). Moreover, the absence of any prejudice is further evidenced by the fact that Plaintiff's lawsuit is still in the early stages of litigation. As such, the parties have incurred only minimal expenses to this point. Therefore, Plaintiff has failed to show waiver by Defendants.

Accordingly, the Court cannot find that Defendants' waived their right to mediation. Defendants did not knowingly and intentionally relinquish their express rights under the Licensing Agreement. Furthermore, there was only a short delay between the filing of the Complaint and Defendants' demand for mediation, and Plaintiff was not prejudiced by Defendants' minimal trial-oriented activities. For these reasons, Plaintiff's claim that Defendants have waived their express rights under the Licensing Agreement must fail.

### iii. defendant Knapp may assert a right to mediate under the Licensing Agreement

■ In addition to claiming Defendants waived their right to mediation, Plaintiff also seeks to defeat Defendants' motion by arguing that Defendant Knapp is not a party to the Licensing Agreement and thus has no right to seek enforcement of Article XIII's mediation clause. Count Two of the Complaint alleges that Defendant Knapp, along with Defendant TAT, infringed Plaintiff's copyright. Because the Plaintiff's copyright claim against Knapp is so intertwined with Plaintiff's claims against TAT and the rights and privileges afforded under the Licensing Agreement, Plaintiff's argument must fail.

■ In the context of arbitration agreements, courts have used the doctrine of equitable estoppel to prevent a signatory to a contract from claiming that a non-signatory cannot invoke the agreement's alternative dispute resolution provision. *See, e.g., American Bankers Insurance Group v. Long*, 453 F.3d 623, 627 (4th Cir.2006) ("The 'legal principle [underlying the theory of equitable estoppel] rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage.' "); *Decisive Analytics Corp. v. Chikar*, No. CL 2008–6171, 2008 WL 6759965 (Va.Cir.Ct.2008) (describing Fourth Circuit precedent applying the equitable estoppel doctrine to allow non-signatories to invoke arbitration provisions as "instructive"). The equitable estoppel doctrine is applicable in two circumstances. "First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must 'rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory." *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 396 (4th Cir.2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999)) (alteration in original). A signatory "rel[ies] on the terms of the written agreement" when the signatory sets forth allegations in the complaint against the non-signatory that either directly reference the contract or presume

the contract's existence. *Id.* Second, equitable estoppel also applies when "the signatory [to a contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (quoting *MS Dealer Serv. Corp.,* 177 F.3d at 947) (alteration in original).

The equitable estoppel doctrine applies equally to the instant dispute. To determine whether Plaintiff is estopped from preventing Defendant Knapp from invoking the mediation provision, the Court must examine the allegations set forth in Plaintiff's Complaint. Count Two alleges that Defendants TAT and Knapp infringed Plaintiff's copyright covering its flash tattoo designs. In short, Plaintiff claims Defendants reproduced the copyrighted designs without authorization. As noted above, Count Two sets forth a claim arising from the Licensing Agreement because whether the parties infringed the copyright depends in large part on the rights and privileges granted under the Agreement. As much is clear from Plaintiff's reference to the Licensing Agreement in its written allegations. Importantly, the claims against Defendant TAT, the signatory, and Defendant Knapp, the non-signatory, allege "substantially interdependent and concerted misconduct by both the nonsignatory and ... the signatories to the contract." *Id.* (quoting *MS Dealer Serv. Corp.* 177 F.3d at 947). Accordingly, under the doctrine of equitable estoppel, Defendant Knapp, although a non-signatory,

may also assert the mediation provision of the Licensing Agreement. As a result, Plaintiff's claim that the action should not be dismissed as to Knapp because the mediation provision does not apply to him as a non-signatory must fail.[4]

For the reasons explained above, the Court grants Defendants' Motion to Dismiss and dismisses the Plaintiff's Complaint without prejudice.

## C. Request for Costs and Attorney's Fees

Defendants also request that the Court award them costs and attorney's fees as "prevailing part[ies]" in the matter pursuant to a provision in the Licensing Agreement. Article XVI of the Agreement provides that "[i]n any action to enforce or collect funds owed under this Agreement, the prevailing party shall be entitled to costs and reasonable attorneys' fees incurred thereby." Defs.' Mot. to Dismiss, Ex. A. Defendants now assert that Plaintiff should bear the costs incurred by Defendants in prosecuting the instant motion. To decide whether an award of costs and attorney's fees is justified, the Court must determine whether Defendants constitute "prevailing part[ies]" as the term is interpreted when used in such contracts.

■ In the context of contractual provisions entitling the "prevailing party" to an award of attorney's fees, the Virginia Supreme Court has interpreted the term "prevailing party" to mean "a party in whose favor a judgment is rendered, regardless of the amount of damages award-

---

4. Plaintiff also argues that Defendants have admitted to an independent ground for jurisdiction based on copyright infringement under 28 U.S.C. § 1338(a) such that there is no need to satisfy the condition precedent in the Licensing Agreement. Plaintiff cites no case law in support of this proposition. In the instant matter, determining whether Plaintiff's Complaint is properly before the Court

does not hinge on whether jurisdiction is permitted statutorily, either as a copyright claim or under diversity of citizenship, but rather whether the parties have agreed not to subject themselves to jurisdiction in this Court only any basis before a condition precedent, namely a request for mediation, has been satisfied. *See e.g., Mortimer,* No. Civ. 03–1051, 2003 WL 23305155, at *3.

ed." *Sheets v. Castle,* 263 Va. 407, 413, 559 S.E.2d 616 (2002) (quoting *Black's Law Dictionary* 1145 (7th ed.1999)) (internal quotations omitted). Under this definition, a prevailing party "is the party in whose favor the decision or verdict in the case is or should be rendered and judgment entered....." *Id.* at 414, 559 S.E.2d 616 (quoting *Richmond v. County of Henrico,* 185 Va. 859, 869, 41 S.E.2d 35 (1947)). "[I]n determining this question the general result should be considered, and inquiry made as to who has, in the view of the law, succeeded in the action." *Id.* (quoting *County of Henrico,* 185 Va. at 869, 41 S.E.2d 35). Applying these parameters, the Virginia Supreme Court has concluded that in a nonsuit, which "does not involve a decision on the merit s," the party in whose favor the action was nonsuited is not a "prevailing party" for purposes of awarding attorney's fees. *Id.*

Similarly, the Supreme Court of the United States has held that when a statute authorizes courts to award attorney's fees to a "prevailing party," such an award is only warranted: (1) when a party has won a judgment on the merit s, or (2) when a court-ordered consent decree has been entered. *See Buckhannon Bd. and Care Home, Inc. v. W.V. Dept. of Health & Human Resources,* 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (finding that provisions in Fair Housing Amendments Act and Americans with Disabilities Act permitting award of attorney's fees to prevailing party apply only when a court order causes a "material[ ] alteration of the legal relationship between the parties"). The Fourth Circuit has applied *Buckhannon's* interpretation of the term "prevailing parties" in the context of franchise agreements to find that a request for costs and attorney's fees was similarly premature when the defendant had prevailed only in vacating an arbitration decision and not on the merits. *Choice Hotels Int'l.*

*Inc. v. SM Property Management, LLC.,* 519 F.3d 200, 210–11 (4th Cir.2008).

Here, although the Defendants have prevailed on their Motion to Dismiss, the Court's order dismissing the Plaintiff's Complaint is not an adjudication on the merits. Moreover, because the Court has dismissed the Complaint without prejudice, the instant lawsuit may be re-filed, making such an award at this time premature. Accordingly, Defendants are not entitled to costs and attorney's fees under Article XIII of the Licensing Agreement and their motion must be denied.

## III. CONCLUSION

For the reasons discussed above, the Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE.** In addition, Defendants' Request for Costs and Attorney's Fees is **DENIED.**

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**