# CIRCUIT COURT OF THE CITY OF NORFOLK

Dominion Pathology
Laboratories, P.C.

v.

Anthem Health Plans
of Virginia, Inc.

May 17, 2016

Case No. (Civil) CL15-2273-01

By Judge Michelle J. Atkins

This matter was last before the Court on April 21, 2016, on the Special Plea of Waiver and Estoppel and Motion for Partial Summary Judgment on the Counterclaim for Declaratory Judgment filed by Defendant Anthem Health Plans of Virginia, Inc. ("Anthem").

The issues before the Court are: (1) whether Dominion waived its rights to claim a breach of contract; (2) whether Dominion should be estopped from making any claims arising from the Amendment the parties executed December 18, 2014; and (3) whether Anthem is contractually entitled to terminate its contract with Dominion. After considering the parties' pleadings, the applicable case law, the Agreement entered into between the parties that is at issue in this case, and the oral arguments, the Court finds that: (1) Dominion did not waive its rights to claim a breach of contract; (2) Dominion is not estopped from making claims arising from the Amendment; and (3) Anthem is contractually entitled to terminate its contract with Dominion. Therefore, the Court overrules Anthem's Special Plea of Waiver and Estoppel. The Court grants Anthem's Motion for Partial Summary Judgment on the Counterclaim for Declaratory Judgment and

issues a declaration that under the terms of the parties' Agreement, the Termination Without Cause provision is legally valid and enforceable.

*Background*

On March 3, 2015, Dominion Pathology Laboratories, P.C. ("Dominion"), a three-physician practice providing diagnostic services, filed a complaint seeking declarations that Anthem, an insurance provider in whose preferred provider network Dominion had participated for over a decade, amended Dominion's reimbursement rates in violation of Virginia's Any Willing Provider statute and the Affordable Care Act. (Compl. 1.) This action stems from an October 15, 2014, notice sent from Anthem to Dominion of its intent to amend the parties' agreement, effective February 2, 2015. (*Id.* at 5.) This Amendment included a change to the Plan Fee Schedule, the amount of money Dominion would receive from Anthem for performing certain services for Anthem-insured patients. (*Id.*) The notification stated, in relevant part:

> This amendment automatically becomes effective February 2, 2015 unless you supply Anthem with written notice of your intent to terminate the laboratory provider agreement within (40) calendar days of the postmark date of this amendment package. If such notice is given, your laboratory provider agreement will terminate 60 days after the expiration of this 40 day period. Additionally, you may always terminate your agreement with a 120-day notice of termination.

(Amended Answer, Ex. C.)

In response to Anthem's notification of the Amendment, on October 28, 2014, "Dominion began negotiating with Anthem regarding the upcoming February 2, 2015[,] amendment to Dominion's reimbursement rates." (Plea of Waiver and Estoppel 3.) On November 11, 2014, via e-mail, "Dominion proposed an alternative reimbursement schedule to Anthem for Anthem's consideration." (*Id.*; Pl. Br. in Opp'n to Plea of Waiver and Estoppel Ex. 1.) In addition to proposing an alternative reimbursement schedule, Dominion's e-mail to Anthem also included its interpretation of relevant provisions of the Affordable Care Act, a statement that "[Dominion] strongly believe[s] that Section 2706 of the ACA precludes Anthem from discriminating against Dominion based on any considerations beyond quality or performance measures," and that "if [Anthem] is not willing to reconsider [its] position and accept [Dominion's] proposal," Dominion's "next step will be . . . taking such actions as it feels necessary to protect its business interests and legal rights." (Br. in Opp'n to Plea of Waiver and Estoppel Ex. 1.)

"Anthem rejected Dominion's November 11, 2014, proposal" on November 18, 2014, "but invited Dominion to submit a revised proposal."

(Plea of Wavier and Estoppel 3.) Anthem sent Dominion a counter-proposal on December 9, 2014, "providing Dominion with three options: (1) accept Anthem's December 9, 2014, counter-proposal; (2) do nothing and the reimbursement rates in the October 15, 2014 Notice would become effective; or (3) provide written notice of termination of the Provider Agreement by December 17, 2014." (*Id.*) On December 17, 2014, a string of e-mails were exchanged between Dr. Robert Frazier, one of Dominion's owners, and an Anthem representative. (*Id.*) At 9:38 a.m., Frazier wrote that Dominion "was 'considering not excepting [sic] the rates and possible litigation with Anthem.'" (*Id.*) At 4:07 p.m., Frazier e-mailed Anthem again, stating that "Dominion had 'decided to remain "in-network" with Anthem,' but 'may file for a Declaratory Judgment.'" (*Id.*) At 5:00 p.m. Frazier e-mailed Anthem a final time, "agree[ing] to accept the amended reimbursement rates, including the counter-proposal offered by Anthem on December 9, 2014." (*Id.* at 4.) The first version of the Amendment was executed the following day, on December 18, 2014, and the final version was executed on February 9, 2015. (*Id.*)

On March 3, 2015, Dominion filed this lawsuit. Anthem is alleged to have violated Paragraph 9.7 of the Anthem Provider Agreement, the "Compliance with Federal and State Law" provision, which states in relevant part:

> Compliance with Federal and State Laws. Anthem and Provider agree to comply with all requirements of the law relating to their obligations under this Agreement, and maintain in effect all permits, licenses and governmental and board authorizations and approvals as necessary for business operations. . . . From time to time legislative bodies, boards, departments or agencies may enact, issue or amend laws, rules, or regulations pertinent to this Agreement. Both parties agree to immediately abide by all said laws, rules, or regulations to the extent applicable, and to cooperate with the other to carry out any responsibilities placed upon the other by said laws, rules, or regulations, subject to the other's right to terminate as set forth under this Agreement.

Anthem breached this provision of the contract, Dominion alleges, by violating the anti-discrimination provisions of the Virginia Any Willing Provider statute and Section 2706 of the Affordable Care Act.

On January 28, 2016, Anthem filed the Counterclaim in this matter, seeking a "declaration of its rights under the parties' written agreement, namely, whether Anthem is contractually and legally permitted to terminate its contractual relationship pursuant to the express terms of the parties' contract." (Amend. Ans. and Counterclaim 14.) Anthem bases this alleged

right to terminate on Paragraph 8.2 of the Provider Agreement, which states in relevant part:

> *Termination Without Cause.* Either party may terminate this Agreement or Provider's participation in a Network(s) without cause at any time by giving at least one hundred twenty (120) days prior written notice of termination to the other party, except as otherwise provided in section 9.1 of this Agreement.

## Positions of the Parties

### A. Anthem's Special Plea of Waiver and Estoppel

Anthem alleges that, by its intentional actions — entering into the Phased-In Rates Amendment — Dominion has waived its rights to claim a breach of contract and should be estopped from making any claims arising from the amendment. Anthem notes that the elements of waiver are: (1) knowledge of the right; and (2) intention to relinquish the right. Dominion's knowledge of its rights under the Agreement, Anthem asserts, are evidenced by its statements that it was considering not accepting the Amendment and that it was considering possible litigation. (Special Plea of Waiver and Estoppel 3.) "Dominion demonstrated its intent to relinquish its claims and purported rights," Anthem argues, "when it executed the final version of the Phased-In Rates Amendment, expressly acknowledging its 'desire to modify certain terms of the agreement.'" (*Id.* at 7.)

Anthem also argues that Dominion is estopped from bringing any claims based on the Amendment, which it executed and expressly agreed to. (*Id.* at 8.) Anthem asserts that the "Provider Agreement was 'modified by an express mutual agreement,' which was memorialized 'in writing'" when the parties executed the Amendment. (*Id.*) Having agreed to this Amendment, Anthem argues Dominion "received 'valuable consideration' and expressly 'surrendered [any] right [purportedly] guaranteed by the contract' regarding such rates," and "is estopped from now claiming that those . . . rates constitute a breach of contract." (*Id.* at 9 (quoting *Stanley's Cafeteria v. Abramson*, 226 Va. 68, 73, 306 S.E.2d 870, 873 (1983)).)

### B. Anthem's Motion for Partial Summary Judgment on Its Counterclaim for Declaratory Judgment

Anthem requests partial summary judgment on its counterclaim for declaratory judgment. Specifically, Anthem seeks the Court to issue a declaration that the Termination Without Cause provision, which Anthem sought to use late in 2015, of the parties' contract is legally valid and enforceable.

## C. *Dominion's Opposition to Waiver and Estoppel*

Dominion argues first that Anthem, in its pleas of waiver and estoppel, "seeks to achieve a release or relinquishment of claims it did not bargain for in the Phased-In Rates Amendment." (Br. in Opp'n 7.) Specifically, Dominion argues it "was never asked by Anthem to, nor did it, release or waive its right to assert the continued unreasonableness of the slightly modified rates. The absence of any release provision . . . demonstrates that no agreement to release or relinquish claims was reached." (*Id.*) This lack of written waiver, despite the opportunity to negotiate for and include one, Dominion argues, "forecloses Anthem's claims of waiver and estoppel." (*Id.*)

Dominion next argues that Anthem failed to satisfy its burden of proving implied waiver. Without disputing that it knew of its rights, Dominion denies that it intended to relinquish its rights and asserts that the facts do not support a showing of intent to waive.

Anthem also failed to prove estoppel, Dominion asserts. "Because the Phased-In Rates Amendment *does not* contain a provision releasing [Dominion's] claims," Dominion argues, "it cannot form the basis of an 'estoppel.'" (*Id.* at 9.) Dominion argues Anthem has failed to show that Dominion has made any representation that it was releasing its claims. (*Id.* at 9-10.) In fact, Dominion insists, "this was after clear and consistent notice by [Dominion] to Anthem to the contrary." (*Id.* at 10.) Dominion next asserts that "where the law . . . and the Anthem Provider Agreement . . . already obligated Anthem to pay higher, non-discriminatory rates to [Dominion], Anthem's agreement . . . does not represent detrimental reliance or change of position." (*Id.*)

Dominion further argues that the Court should find that it did not waive its rights and is not estopped from asserting them on the basis of public policy. The Virginia Any Willing Provider statute, which covers interactions between Anthem and Dominion, was created to prevent discrimination. (*Id.*) Relying on a case out of the Eastern District of Virginia, Dominion asserts that "[w]here statutes rely on the ability of private parties to assert their statutory rights in order to vindicate the public interest, those parties cannot waive those rights by contract." (*Id.* at 11 (quoting *AT&T Commc'ns, Inc. v. Bell Atlantic-Va., Inc.*, 35 F. Supp. 2d 493, 497 (E.D. Va. 1999)).) Moreover, Dominion notes, the Supreme Court of Virginia has held that statutory rights designed to protect the public interest cannot be waived. (*Id.* at 12-13 (citing *Colbert v. Ashland Const. Co.*, 176 Va. 500, 505-06, 11 S.E.2d 612, 615 (1940)).)

Lastly, Dominion asserts Anthem's Plea in Bar does not implicate a discrete set of facts, as is required for the Court to consider a plea in bar. Rather, Dominion argues, "the 'distinct issue of fact' asserted by Anthem here devolves immediately into a consideration of the entire issue in dispute." (*Id.* at 13.)

## D. *Dominion's Opposition to Summary Judgment*

Dominion's argument in opposition to Anthem's motion for summary judgment on its counterclaim for declaratory judgment rests solely on its assertions that the Termination Without Cause provision is void and unenforceable as contrary to public policy and the law. The public policy that Dominion argues this provision violates is that in favor of choice of medical providers and against discriminatory exclusion, as found in the Any Willing Provider statute (Opp'n Sum. Judg. 2.) Similarly, Dominion argues the Termination Without Cause provision violates the Any Willing Provider statute itself.

## *Analysis*

### A. *Legal Standard*

A plea in bar presents a distinct issue that, if proven, creates a bar to the plaintiff's right of recovery. *Hilton v. Martin*, 275 Va. 176, 177, 654 S.E.2d 572 (2008). The purpose of a plea in bar is "to narrow the litigation by resolving an issue that will determine whether a plaintiff may proceed to trial on a particular cause of action." *Hawthorne v. VanMarter*, 279 Va. 566, 578, 692 S.E.2d 226, 234 (2010).

The moving party has the burden of proving the dispositive fact raised in a plea in bar. *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996). As with a demurrer, the facts contained within a complaint are considered true for purposes of a plea in bar. *Id.* '

Rule 3:20 of the Rules of Supreme Court of Virginia, which governs motions for summary judgment, states in part as follows:

> Any party may make a motion for summary judgment at any time after the parties are at issue . . . . If it appears from the pleadings, the orders, if any, made at a pretrial conference, the admissions, if any, in the proceedings, or, upon sustaining a motion to strike the evidence, that the moving party is entitled to judgment, the court shall enter judgment in that party's favor. . . . Summary judgment shall not be entered if any material fact is genuinely in dispute.

Va. Sup. Ct. R. 3:20. A trial court considering a motion for summary judgment must "accept[ ] as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason." *Fultz v. Delhaize Am., Inc.*, 278 Va. 84, 88, 677 S.E.2d 272, 274 (2009).

Although summary judgment is available in certain circumstances, it is well settled that it "is a drastic remedy, available only when there are no material facts genuinely in dispute." *Id.* "[I]f the evidence is conflicting on

a material point or if reasonable persons may draw different conclusions from the evidence, summary judgment is not appropriate." *Id.*

Virginia's Any Willing Provider Statute, codified at § 38.2-3407(B) of the Code of Virginia, states:

> Any such insurer shall establish terms and conditions that shall be met by a hospital, physician or type of provider listed in § 38.2-3408 in order to qualify for payment as a preferred provider under the policies or contracts. These terms and conditions shall not discriminate unreasonably against or among such health care providers. No hospital, physician or type of provider listed in § 38.2-3408 willing to meet the terms and conditions offered to it or him shall be excluded. Neither differences in prices among hospitals or other institutional providers produced by a process of individual negotiations with providers or based on market conditions, or price differences among providers in different geographical areas, shall be deemed unreasonable discrimination.

Section 2706 of the Affordable Care Act also prohibits insurance providers from discriminating against providers, mandating that:

> A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law. This section shall not require that a group health plan or health insurance issuer contract with any health care provider willing to abide by the terms and conditions for participation established by the plan or issuer. Nothing in this section shall be construed as preventing a group health plan, a health insurance issuer, or the Secretary from establishing varying reimbursement rates based on quality or performance measures.

42 U.S.C. § 300gg-5.

### Discussion

The Court has considered the pleadings, oral argument at the April 21, 2016, hearing, and applicable authorities.

## A. *Dominion Did Not Waive Its Rights To Claim a Breach of Contract*

In Virginia, "waiver is an intentional relinquishment of a known right." *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 74, 306 S.E.2d 870, 873 (1983). The elements of a waiver are: (1) knowledge of the facts basic to the exercise of the right; and (2) the intent to relinquish that right. *Virginia Polytechnic Inst. v. Interactive Return Serv.*, 267 Va. 642, 651-52, 595 S.E.2d 1, 6 (2004). Despite the requirement of a knowing waiver, "Virginia law allows a party to enter into a general release of claims and 'absorb the risk of having "inferior knowledge" by agreeing to release any and all claims, regardless of whether the claims were "known" or "unknown."'" *Best Med. Int'l, Inc. v. Wells Fargo, Inc.*, 84 Va. Cir. 32, 35 (Fairfax Cnty. 2011) (quoting *Noell Crane Sys. GmbH v. Noel Crane & Serv.*, 677 F. Supp. 2d 852, 873 (E.D. Va. 2009)).

The Court finds, and Dominion acknowledges, that there is no question Dominion knew of its rights under the contract and under the law. Indeed, in several of its communications with Anthem regarding the negotiation of the Phased-In Rates Amendment, Dominion noted that it was considering not accepting the Amendment and instead leaving the Anthem Preferred Provider Network. Dominion, likewise, was well aware of its right to sue Anthem for breach of contract if it believed Anthem had violated its terms, as evidenced by the numerous references to considering litigation sent to Anthem.

Anthem argues that, despite Dominion's knowledge of its rights, it nevertheless executed the final version of the Phased-In Rates Amendment; therefore, it impliedly waived its rights to bring suit. Dominion cannot, Anthem asserts, "lull [Anthem] into a false sense of security by executing the Phased-In Rates Agreement, and then turn around and claim a breach." (Plea of Wavier & Estoppel 7 (internal quotations omitted).) The Court finds that, given Dominion's statements and actions, Anthem could not reasonably have been "lulled" into a false sense of security. It is reasonably clear from the communications between the parties that Dominion did not have any intention to relinquish its rights to pursue litigation. It made its intention not to waive its rights to litigation clear to Anthem even as late as 4:07 p.m. on December 17, 2014, when Dominion "advis[ed] that [it] had 'decided to remain "in-network" with Anthem,' but 'may file for a Declaratory Judgment.'"

The parties were free to negotiate for a general release from all claims, but Anthem failed to negotiate for such a waiver. The Court finds that Dominion did not intend to relinquish its right to pursue a breach of contract claim, and in fact went to great lengths to make it clear to Anthem that it was not waiving any rights.

B. *Dominion Is Not Estopped from Making Claims Arising from the Amendment*

The elements of estoppel are: (1) representation; (2) reliance; (3) change of position; and (4) detriment to the relying party. *Princess Anne Hills Civic League, Inc. v. Susan Constant Real Estate Trust*, 243 Va. 53, 59, 413 S.E.2d 599, 603 (1992). The burden of proving estoppel rests on the party relying thereon, and it must be proven by clear, precise, and unequivocal evidence. *Commonwealth, ex rel. Attorney Gen. v. Washington Gas Light Co.*, 221 Va. 315, 325, 269 S.E.2d 820, 826 (1980). Anthem asserts that by their "mutual intention," the parties modified the Provider Agreement, and that Dominion, "having accepted the amended rates by executing the Phased-In Rates Amendment . . . is estopped now from claiming that those very same rates constitute a breach of contract." (Plea of Wavier and Estoppel 8-9.)

It is apparent from the communications between the parties, as well as Anthem's privilege log, that litigation should have been reasonably anticipated, and was in fact anticipated by Anthem's legal team. Therefore, there could be no reasonable reliance on any representations made by Dominion in executing the Amendment. Again, even while executing the amendment, Dominion made clear its intention to pursue litigation.

Moreover, although Anthem attempts to hold Dominion to the "four corners of the document" in executing the Amendment, Anthem itself did not exercise its own rights under the original contract. Specifically, Anthem had the right to present Dominion with changes to the Agreement and terminate the contract if Dominion did not agree. Instead of exercising its rights under the Agreement, Anthem engaged in negotiation with Dominion over several months, thereby departing from the four corners of the document itself.

C. *Anthem Is Contractually Entitled To Terminate Its Contract with Dominion*

Anthem moves the Court for partial summary judgment on its counterclaim for declaratory judgment. In order to grant summary judgment, there must be no genuine disputes of material fact. Dominion does not assert that any genuine issues of material fact exist. Rather, its opposition to summary judgment rests solely on its argument that public policy precludes the Court from enforcing the Termination Without Cause contract provision. The public policy to which Dominion refers is that favoring non-discrimination in provider networks. In support of its argument, Dominion relies on *HCA Health Services. v. Aetna Life Insurance Co.*, in which the Eastern District of Virginia held that the insurance provider "violated the Virginia Preferred Provider statute, § 38.2-3407, by initially excluding Reston Hospital from the Aetna PPO without affording Reston Hospital any opportunity to negotiate terms." 1994 U.S. Dist. LEXIS 6080, at *18

(E.D. Va. Mar. 4, 1994). That case is distinguishable from the instant case as Aetna was found to have "wrongfully failed to negotiate" with the provider, whereas Anthem seeks to terminate the Agreement in accordance with the terms of the contract. *Id.* at *6.

The Court first notes that the Virginia Any Willing Provider statute "does not mandate *non-discriminatory* terms and conditions. Rather, it prohibits *unreasonable* discrimination against or among providers. Reasonable discrimination between providers is necessary to establish a limited network that can effectively reduce costs by inducing hospitals to lower prices in exchange for a greater market share." *HCA Health Services v. Metropolitan Life Ins. Co.,* 752 F. Supp. 202, 207 (E.D. Va. 1990). Moreover, the Termination Without Cause provision of the Agreement provides that "[e]ither party may terminate [the] Agreement."

The Court does not find persuasive Dominion's argument that the Termination Without Cause provision is void as contrary to public policy. Likewise, the Court will not invalidate the Termination Without Cause provision as violating the Any Willing Provider Statute. This is not to say that Dominion cannot sue Anthem (if they believe they have a cause of action) for a violation of the Any Willing Provider statute, but the Court will not order Anthem to remain in a contract with Dominion where that contract contains a Termination Without Cause provision. The inquiry into whether Anthem can terminate the Agreement is therefore limited to the four corners of the contract. The plain language of the contract allows either party to terminate, without cause, after 120 days' notice. The language of the Phased-In Rates Amendment explicitly sets the rates through February 1, 2017. The Court interprets the new rate allowance to ensure Dominion that their new rate would remain in effect at least until February 1, 2017, *unless* Anthem or Dominion (who also had the right to terminate under the Agreement) decided to terminate the Agreement.

The Court notes Dominion argued in its Pleading: "Conspicuously absent from the Phased-In-Rates Amendment is any mention of a release of claims or other expression of intent to waive, discharge or otherwise relinquish," and the Court agreed that Dominion did not waive its rights to claim breach of contract. In addition, also absent from the amendment is any language changing or modifying the right of Anthem to terminate without cause.

Although Anthem provides some reasons it could terminate for cause (*i.e.,* Dominion reaching out to other providers), Anthem seeks to terminate pursuant to paragraph 8.2 of the Agreement. Just as there is nothing in the Agreement regarding Dominion's waiver of its right to file a lawsuit, there likewise is nothing in the Agreement altering Anthem's right to terminate the Agreement without cause.

## *Conclusion*

Based on the foregoing, the Court overrules Anthem's Special Pleas of Waiver and Estoppel and grants Anthem's Motion for Summary Judgment on the Counterclaim.